[No. 2,290.]

P. J. BARBER, JAMES BROKAW, WALTER M. ROCKWELL, AND HIRAM L. COYE, PARTNERS UNDER THE FIRM NAME OF ROCKWELL, COYE & CO., G. O. WILSON AND N. S. WILSON, PARTNERS UNDER THE FIRM NAME OF WILSON & BROTHER, JOHN DANIEL, B. WHEATON, JAMES DAVIS, C. H. STANYAN, AND W. H. STANIELS, PARTNERS UNDER THE FIRM NAME OF STANYAN & CO., THOMAS CATHCART, H. ROSEKRANZ, AND S. READ, PARTNERS UNDER THE FIRM NAME OF H. ROSEKRANZ & CO., *v.* R. T. REYNOLDS AND LEONARD WASHBURN, PARTNERS UNDER THE FIRM NAME OF R. T. REYNOLDS & CO., W. A. GREEN, HENRY L. DAVIS, AND GEORGE MARSDEN.

PARTIES PLAINTIFF IN SUITS TO ENFORCE LIENS.—The several parties who furnish materials for or perform labor on a building constructed without any contract in writing for building the same, may unite in an action to enforce their several liens under the Act of April 20th, 1862, in relation to mechanics' liens.

LIENS WHERE THERE IS NO CONTRACT IN WRITING.—When a person proceeds to construct a building by purchasing material and employing labor without making any contract in writing for the construction of the same, the parties thus furnishing material and performing labor are entitled to liens under the seventeenth section of the Act of 1862 concerning mechanics' liens, even though the amount of a claim exceeds two hundred dollars; and the second section of said Act, requiring contracts to be in writing, has no application to such claims.

LIEN OF MECHANICS AND JUDGMENTS—PRIORITY.—The lien of a judgment rendered after labor is commenced or material is first delivered, is postponed to the lien of the material man, or laborer, although the labor is

completed and the last of the material delivered after the judgment is docketed.

LIEN FILED FOR TOO MUCH.—A lien for labor or material under the lien Act of 1862, will not be rejected because it was filed in the Recorder's office for too much, unless it appears that it was a willfully false claim.

DAY WHEN MECHANICS' LIEN TAKES EFFECT.—Under the lien Act of 1862, where there is no written contract for the construction of the building, the several liens of the material men and laborers do not relate back to the day of the commencement of the building, but each lien relates back to and takes effect on the day the particular labor was commenced, or the material began to be furnished for which the lien is sought to be enforced.

SATISFACTION OF JUDGMENT BY LEVY.—Although it is a general proposition that a levy under an execution upon sufficient personal property to satisfy it amounts to a satisfaction of the judgment, yet such is not the case as to the debtor if he consents to an application of the proceeds of sale to junior executions.

SATISFACTION OF JUDGMENT BY WAIVING ITS RIGHT TO PROCEEDS OF SALE.—If a judgment has the first lien on real estate and mechanics' liens have the second lien and other judgments the third lien in point of time, and an execution issued on the first judgment is levied on sufficient personal property to satisfy it, and executions on the other judgments are then levied on the same, and the attorney for the plaintiff in the first judgment consents that the proceeds of sale be applied to the other judgments, the first judgment will be deemed satisfied as against the mechanics' liens.

NOTICE OF MATTERS AFFECTING VALIDITY OF JUDGMENT.—If the plaintiff in a judgment bids in real estate sold on execution issued under it in the name of another person, but applies the amount due on the judgment in payment of the bid, and is himself the real purchaser, such other person will be deemed to have notice of all matters affecting the validity of the judgment and sale under it, which were within the knowledge of the plaintiff in the judgment.

PERSONAL JUDGMENT IN LIEN SUITS.—In a judgment enforcing a mechanics' lien a personal judgment cannot be rendered against those defendants against whom no personal claim is established.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

The complaint in this action started with the following averments:

" That during all the times hereinafter stated, the said defendants, R. T. Reynolds and Leonard Washburn, were partners in business in said City and County of San Fran-

cisco, under the firm name of R. T. Reynolds & Co. That on or about the 30th day of July, A. D. 1866, at said City and County of San Francisco, and State of California, said last named defendants, as such partners, occupied and possessed, under a written lease for a term of years, having several years to run, a certain lot of land, situated in said City and County of San Francisco, described as follows, viz: Commencing at a point on the northerly side of Howard street, two hundred and twenty feet from the northeasterly corner of Howard and Fifth streets, and running thence easterly along the said northerly line of Howard street fifty-four feet; thence at right angles northerly one hundred and sixty feet; thence at right angles westerly fifty-four feet; and thence at right angles southerly one hundred and sixty feet, to the point of beginning; together with the buildings and improvements thereon. That said last named defendants so being the owners and occupants of said land on the 30th day of July, A. D. 1866, did on said last day commence, and cause to be commenced, the work of constructing and erecting, and did on said day proceed to erect and construct, without making any contract in writing for such construction, the double dwelling-house or buildings which were thereafter erected and constructed on the aforesaid described land by the said Reynolds and Washburn. That the facts hereinbefore averred and stated are alike applicable to each of the causes of action hereinafter stated, and such facts are hereby added to the facts stated in each count, and are hereby made a part of such counts or causes of action.

"That said P. J. Barber, one of the above named plaintiffs, for a separate cause of action, says: Between the 30th day of July, 1866, and the 18th day of September, 1866, at the request of said Reynolds and Washburn, he performed labor and rendered services, by himself and his agents and

servants, in and about the construction and erection of said
houses, to the extent and of the value of thirteen hundred
and fifteen dollars and thirty-six cents, which said sum Rey-
nolds and Washburn promised to pay. And at the like
request he furnished materials in the construction of said
houses to the extent and of the value of ten dollars and fifty-
seven cents, which last sum said defendants promised to pay.
That of the aggregate amount, the said last named sums,
defendants have paid the sum of one thousand and twenty-
four dollars, and no more. That all the materials, etc.,
furnished, and labor furnished or performed by said P. J.
Barber and his servants for said defendants, as aforesaid,
were actually used in the construction and erection of said
double dwelling-house. That a balance of three hundred
and one dollars and ninety-three cents, over and above all
offsets and part payments, and proper credits, together with
interest from September 18th, 1866, still remains due and
unpaid from said last named defendants to P. J. Barber, for
said materials and labor so furnished and performed, and
used in the construction and erection of said double dwell-
ing-house of defendants upon said premises.''

There were separate counts for the claim of each lien-
holder similar to the above. Some of the claims were for
less than two hundred dollars. The Court below gave judg-
ment enforcing the several liens, but in drawing up the judg-
ments it was declared: '' The Court further adjudges and
decrees that there is due from the said defendants to the
plaintiff the sum of ———, for which said last named sum
judgment is hereby awarded in favor of said plaintiff, ———
———.'' This seems to be regarded as a personal judgment
against defendants Green, Davis, and Marsden, who were
only made defendants for the purpose of cutting off the title
acquired by the sale made under the Stanly judgment.
The defendants demurred to the complaint on the ground of

a misjoinder of parties plaintiff, and the Court overruled the demurrer. The defendants appealed.

The other facts are stated in the opinion.

*Wm. Hayes* and *George R. B. Hayes*, for Appellants.

The demurrer to the complaint should have been sustained, on the ground that there was a misjoinder of parties plaintiff, in this, that no community of interest existed among the several plaintiffs, the alleged cause of action of each plaintiff being distinct and independent from the other alleged causes, and from each of them.

The action was brought, and is sought to be maintained, under the provisions of the Act of April 20th, 1862, in relation to mechanics' liens. It is scarcely necessary for us to invite the attention of the Court to the fact that the remedy provided by this statute being an extraordinary one, the statute must be construed strictly, and all its provisions must be strictly complied with by the party invoking its aid. (*Walker* v. *Hauss Hijo*, 1 Cal. 185; *Bottomly* v. *Grace Church*, 2 Cal. 91; *Davis* v. *Livingston*, 29 Cal. 286.)

Unless the statute allows the plaintiffs to join in the action, it certainly must be conceded that they have no right to do so. The alleged cause of action of each plaintiff being distinct from and independent of the other alleged causes, and each of them.

A careful perusal of the Act will show that it was drawn upon the very defective theory that for all buildings to be erected there would be one or more original contractors and an indefinite number of sub-contractors, material men, and mechanics, and however faulty this theory may be, judicial tribunals are not authorized to legislate it to greater perfection.

Section one provides that the original contractor shall have a lien upon the premises to the extent of the original con-

tract price, and that such contract shall operate as a lien in favor of all sub-contractors, etc.

Section two provides that the contract shall be in writing when the amount agreed to be paid thereunder exceeds two hundred dollars.

Section three provides that the lien created by the original contract shall inure primarily to the benefit of the sub-contractors and other employés of the original contractor, and afterwards to the benefit of the original contractor himself.

Section four provides that the lands upon which the building is erected shall be subject to the lien.

Section five prescribes a plan intended to protect the sub-contractors, etc., from any breach of faith on the part of the original contractor.

Section six allows the sub-contractors, material men, etc., to " join in an equitable action for the enforcement of their lien;" not their separate liens, but their lien, *i. e.* the lien of the original contractor, which inures primarily to their benefit. The action is brought to enforce one, not several liens, and this would appear to be the real reason why the sub-contractors are permitted to join.

Section six allows the sub-contractors, under certain other circumstances, to join in such an action, and inferentially allows the original contractor to join with his sub-contractors in such action, and provides that in case he is not named as a plaintiff summons shall be served on him.

Nowhere does the Act, expressly or by implication, authorize two or more original contractors to join in an action for the enforcement of their liens. Each original contractor has a separate and independent lien of his own, to enforce each of which a separate action must be brought. There is no privity of interest or estate between them.

Section seventeen, under which respondents claim the right to join in the action, applies only to sub-contractors. It pro-

vides that wherever any person shall proceed to erect a building without making a contract in writing, all persons who furnish materials or labor therefor—that is, to or for the contractor—shall have a lien for the value thereof, which may be enforced in the same manner as other liens thereinbefore provided for.

This section also goes upon the original contractor theory, and the persons therein referred to as entitled to liens are the sub-contractors and material men, who have been unfortunate enough to be employed by, or to furnish materials to an original contractor, who has neglected to comply with the provisions of section two by making a contract in writing. It is designed to protect such innocent parties from the consequences of the original contractor's neglect, by giving them in such case liens of their own, the original contractor having failed to secure a lien which would have inured to their benefit, and their liens in such cases are to the "full extent" of the labor performed or materials furnished, and are not limited, as they otherwise would be, to the original contract price.

This must be so, otherwise the Legislature would be placed in the following absurd position: By the medium of section two it would say to the mechanic or contractor, your contracts must be in writing when the amount agreed to be paid thereunder exceeds two hundred dollars, and shall be subscribed by the parties to be charged thereby, "otherwise they shall be wholly void, and no recovery shall be had thereon," while by section seventeen it would say to him or them, if you disregard and disobey section two, you shall have a greater lien than section one gives you—that is, one to the full extent of all labor performed or materials furnished, which "may be enforced in the same manner as other liens hereinabove provided for."

The seventeenth section then, we say, has no reference to these plaintiffs, having been enacted for the purpose of pro-

tecting innocent parties, who, working or furnishing materials for the original contractor who had failed to secure a lien, would be in danger of losing their wages or materials, without any fault or neglect on their part. To them alone it must be limited by construction if the real intent and meaning of the Act is to have effect. Two classes of persons were to be protected: First, the original contractor dealing with the owner or lessee of the land; and second, those dealing with the original contractor.

The plaintiffs are not, nor was either of them, nor was the intervenor entitled to a lien on the premises.

First—As to plaintiff, Barber. Under the agreement with him there necessarily had to be paid him a sum exceeding two hundred dollars. Up to the time the work was stopped the amount was one thousand three hundred and twenty-five dollars and ninety-eight cents. The contract should, therefore, have been in writing and subscribed by the parties to be charged thereby. (2 Hittell's Digest, 4472.)

It is claimed, however, that the judgment should have been satisfied out of the personal property of Reynolds and Washburn, and that by permitting junior judgment creditors to have priority over him, Stanly, the judgment was satisfied. This is clearly not so.

A mere levy upon sufficient personal property to pay the execution never amounts to a satisfaction of the judgment. (*People* v. *Hobson*, 1 Denio, 578; *Ostrander* v. *Walter*, 2 Hill, 331.)

A levy under an execution remains good against the debtor although the process becomes dormant as to junior executions. (*Peck* v. *Tiffany*, 2 Com. 451.)

In the case at bar the personal property was sold under four executions besides the one issued on the Stanly judgment. It is true, the latter had the prior levy, but it was perfectly competent for him to waive his seniority; the judgment debtors lost nothing by his so doing. The proceeds of

the property sold went to their creditors, and *pro tanto* extinguished their liabilities.

It is only when injury has been done the judgment debtor, as by absolutely depriving him of his property without any benefit being done him, that a levy and sale of sufficient property to cover the execution satisfies the judgment.

*C. H. Parker,* for Respondents.

The plaintiffs do not claim that at any time the defendants entered into any written contracts with them, or either of them, to furnish materials, or to perform labor. As will be seen by the testimony of P. J. Barber, the defendants Reynolds and Washburn employed him to superintend the entire construction of the dwelling houses, and to furnish men, etc.; or, in the language of the seventeenth section of the Lien Law, under which this work was done (2 Hittell's Dig., par. 4487), the defendants "proceeded to erect, and construct, and cause to be constructed, a dwelling house, without making a contract in writing," and employed said Barber to superintend generally, and to furnish men—all to be paid by the day. Manifestly, we must look to section seventeen as the foundation of our right to recover. The plaintiffs are not "contractors," in the sense in which that word is used in the Lien Law. The argument of the appellants that this section applies to sub-contractors alone is unsound.

If the defendants' construction of section seventeen should obtain, namely, that it applies to sub-contractors alone, then whenever any person had a claim for days' work, or for materials furnished, for a sum exceeding two hundred dollars, he would have no remedy under the Lien Law. Will it be contended that if a person builds a house by days' work, without a contract in writing, and a party furnishes lumber on his order, from time to time, to the extent of one thousand dollars, that he would have no lien? And yet

he would have none if section seventeen applies to sub-contractors only. The sections prior to section seventeen were intended to provide for cases where the owner has his work done by contract—to cases where the price is agreed upon, and all he has to do is to pay his money on performance of the contract. And those sections make ample provision for sub-contractors. Section seventeen was not intended to aid them in any way. Said section seventeen provides that rights acquired under it " may be enforced in the same manner as other liens herein provided for." As to other liens acquired by contractors and sub-contractors, and persons employed generally by them, all may join as plaintiffs. (Sec. 6.) There is a direct community of interest under the law and in the subject matter or fund to be reached. Well established rules, regulating the joinder of parties plaintiff, would require the plaintiffs to join in this action, if there were no statute upon this subject. (*Barber* v. *Reynolds,* 33 Cal. 497.)

The law is, that a levy and sale upon sufficient personal property to satisfy a judgment, is a satisfaction of it, without regard to whether or not it is applied or indorsed thereon. (*Stanly* v. *Hutton,* 16 N. H. 22; *People* v. *Chisholm,* 8 Cal. 30; *Michels* v. *Hoskin,* 11 Wend. 126; Crocker on Sheriffs, Sec. 432, and authorities cited; *Martin* v. *Carter,* 27 Ill. 294.)

All payments made to a Sheriff on an execution extinguishes the judgment *pro tanto.* (*Slusher* v. *Washington Co.,* 27 Penn. 205; *Adams* v. *Drake,* 11 Cush. R., Mass., 504.)

A bona fide purchaser acquires no title to land through a sale under an execution issued on a satisfied judgment. (Crocker on Sheriffs, Sec. 497; 2 Hill, 566; 8 Wend. 677.)

He buys at his peril even without notice. (*Ib.*)

But Marsden had actual notice. The return on the execution of the levy and sale of the personal property notified him that the execution on which the land was sold was satisfied, in law and fact. The rule of *caveat emptor* applies to

judicial sales. The record of the Sheriff's levy and return showed that the judgment had been satisfied by a levy on and sale of sufficient personal property to satisfy said judgment. The law charged him with notice of those facts on the day of the sale, and he purchased with full notice that the execution was void, and that the judgment was paid. (*Danley* v. *Rector*, 5 Eng. 211; *Wood* v. *Lewis*, 14 Penn. State R., 2 Harris, 9; *Dean* v. *Morris*, 4 Green, Iowa, 312; *Creps* v. *Baird*, 3 Ohio, 277; 1 Cow. 622; 8 Cal. 21, and authorities there cited; 16 Cal. 564; 9 Cal. 479.)

The purchaser must make proper inquiries. (*Biddle* v. *Moore*, 3 Barr. 161.)

The Sheriff must apply the proceeds in the order of seniority. (*State* v. *Salyers*, 19 Ind. 432; 3 Wallace, U. S. Rep. 699.)

If Reynolds & Washburn had not gone through bankruptcy, and the Stanly judgment remained unsatisfied in whole, still they would be forever discharged from the payment of it, as the levy, under the circumstances of this case, completely discharged them, it not appearing that the debtors in any way consented to the misapplication of the twelve thousand dollars actually realized. (*Campbell* v. *Pope*, Hempst., Ark., 271; *Corning* v. *Burdick*, 4 McLean, 133; *United States* v. *Dashiel*, 3 Wallace, 699.)

By the Court, WALLACE, C. J.:

This action was brought to enforce certain liens claimed under the provisions of the Act of April 26th, 1862, in relation to liens of mechanics and others. The plaintiffs, each claiming a distinct and separate lien upon a leasehold interest in a lot on Howard street, in San Francisco, and upon a building partially erected thereon, unite in the complaint and pray a decree enforcing their liens. Pending the action

Buckman intervened and set up a lien in favor of himself as having furnished labor and materials in the construction of the building between August 16th and September 13th, 1866, and prayed relief as though he had been a party plaintiff.

The history of the case is briefly as follows: On the 30th of July, 1866, the defendants, Reynolds and Washburn, being copartners in business and the joint lessees of the Howard street lot, commenced on that day to erect a building thereon, *without making any contract in writing for its construction.* The plaintiffs, Barber, Brockaw, and Rockwell & Coye, severally furnished materials and performed labor about the erection of the building, and commenced to do so anterior to August 7th, 1866, on which day a judgment in favor of one Fabius Stanly, and against the defendants, Reynolds & Washburn, for five thousand dollars and costs, became a lien on the unfinished house and the leasehold premises, and these last named plaintiffs continued to furnish materials and labor in the erection of the building after the lien of the Stanly judgment had so attached. The other plaintiffs, Wilson & Brother, Daniel, Wheaton, Davis, Stanyan & Co., Cathcart, Rosekranz & Co., and the intervenor Buckman, also furnished materials and performed labor in the erection of the building—all of these latter, however, *commencing to do so only after* the 7th day of August, 1866, when the Stanly judgment became a lien upon the premises. The farther prosecution of work upon the building was arrested on the 18th of September, 1866, by the business failure of the defendants, Reynolds & Washburn; on that day an execution theretofore issued upon the Stanly judgment was levied upon the building and premises—having on the day before been levied upon a large amount of personal property, more than sufficient to have satisfied it in full. On the 17th day of September, 1866, Bosque, Boothby, Mattoon, and several other persons, who were creditors at large

of the defendants, Reynolds & Washburn, sued out their several writs of attachment in actions brought to recover divers sums of money owing and due to them by the latter, they all appearing by the same attorney, who was also the attorney for Stanly, the judgment creditor. The writs of attachment were on the same day, the 17th of September, successively levied upon the personal property and also upon the real estate, upon both which the Stanly execution had already been levied, and out of the proceeds of which it was of course entitled to be first satisfied. On the 9th day of October, 1866, judgments having in the meantime been rendered in the several attachment suits, and executions thereon having been placed in the hands of the Sheriff, that officer made a sale of the personal property first levied upon under the Stanly execution and which had ever since the seventeenth of September been held under that levy, and the proceeds of the sale amounted to upwards of twelve thousand dollars. The Sheriff, however, under the direction of the attorney who represented all the execution creditors referred to, made such an application of the proceeds of the sale upon the several executions as that a balance of some sixteen hundred dollars of the Stanly judgment was left unsatisfied. Subsequently, and on the 26th day of October, 1866, the building and premises referred to were sold under the Stanly judgment and were bid off in the name of the defendant Marsden; the bid seems to have been exactly the balance then appearing to be due upon that judgment, including interest and costs accrued thereon to that day. The bid and purchase in the name of Marsden appear to have been made in his absence and without any authority from him. This bid was made by the defendant Green, who was present at the sale and made the bid, as he says, by direction of one Searle, who was the partner of Green. The Court below found as a fact that Searle and the defendant Green really made the purchase, and that the funds therefor were supplied from the

partnership funds of Green & Searle, and upon looking into the evidence as to that matter we are satisfied with the finding.

On the 5th day of October, 1866, the defendant, Green, represented by the same attorney, recovered a judgment against the defendants, Reynolds and Washburn, for upwards of three thousand dollars, which was an indebtedness nominally to Green, but really to the firm of Green & Searles, which judgment then became a lien upon the building and premises; and on the 11th day of March, 1867, Green, as the nominal holder of this lien by judgment, subsequent in point of time to lien of the Stanly judgment, under which he had purchased the property in the name of Marsden, effected a statutory redemption from the sale nominally made to the latter, and ultimately received a Sheriff's deed; and thereupon went into the possession of the building and premises. On the 17th of October, 1866, within thirty days after the work on the building had been discontinued, the plaintiffs and the intervenor, Buckman, filed in the Recorder's office their respective accounts and claims, under the provisions of section twenty-five of the statute already referred to, and subsequently, and in due time thereafter, commenced this action, and at the trial a decree was rendered in their favor.

1. There was no misjoinder of plaintiffs. It was so held when the case was here upon a former occasion. (*Barber* v. *Reynolds*, 33 Cal. 497.) Though the point as to the alleged misjoinder may not have been necessarily involved upon that appeal—as we think it was not—we are entirely satisfied with the reasoning of the Court in that case, and now that the point is involved we adopt it.

2. But in *Barber* v. *Reynolds, supra*, which was an appeal brought by the defendants from an order refusing to dissolve an injunction which the plaintiffs had obtained in aid of their asserted liens, the validity of each of their claims, in

the instances in which such claim exceeded two hundred dollars in amount, was directly involved, and it was then determined, and we think correctly so—and even if we thought otherwise, it thereby became the law of this case—that the liens of the plaintiffs arose under the seventeenth section of the Act, and so were unaffected by the provisions of the second section, requiring contracts involving more than two hundred dollars to be in writing, and that point, now renewed upon this appeal, must, therefore, be determined against the defendant.

3. Nor can it be maintained that a claim verified and filed under section twenty-five of the Act, is not to be supported merely because it turns out on the trial that the claim, as filed in the Recorder's office, was for too much. It would still be valid, unless it should appear that it was a *willfully false claim*, within the meaning and intent of section eleven, which denounces a forfeiture of the liens on that ground. There is no such discrepancy appearing here between the amounts claimed and the amounts adjudged to have been really due, as would suggest a doubt as to the good faith of the parties filing their claims under the statute.

4. There being no written contract for the construction of the building, and the several liens of the plaintiffs arising under the seventeenth section of the Act, these liens did not relate back to the commencement of the work, July 30th, 1866; but each lien related to the commencement of the particular labor or the furnishing of the particular materials for which claim was made in the account filed in the Recorder's office.

This is the rule of priority which we think the statute contemplated in reference to liens of the character of those with which we are now dealing. We think that the phrase, "which lien shall relate to the time of the commencement of the work," occurring in the seventeenth section, has reference, not to the commencement of the general construc-

tion of the building, but to the commencement of the particular work of furnishing materials in virtue of which a particular person claims a lien. Upon any other construction it must follow that a lien sufficient and affording ample security at the time a particular piece of work was commenced or materials furnished might become practically lost or dissipated by the subsequent recklessness or extravagance of the proprietor of the building, involving, it might be, liens of such magnitude in aggregate amount as to leave comparatively nothing to satisfy the laborer or material man whose lien was perhaps the earliest in point of time.

5. Under this view it results that the liens of the plaintiffs, Barber, Brokaw, and Rockwell & Coye, were subsisting liens anterior to the rendition of the Stanly judgment, and, therefore, entitled to satisfaction irrespective of the lien of the judgment and of the sale made thereunder.

6. The liens of the other plaintiffs, however, arising subsequently to the time when the lien of the judgment attached, must depend for their validity upon the question as to whether or not the Stanly judgment is to be treated as having been satisfied by its levy upon a sufficient amount of the personal property of the defendants, Reynolds & Washburn, and the subsequent sale of that property by the Sheriff. There can be no doubt that, as a general proposition, if an execution be levied upon a sufficient amount of personal property to satisfy it in full, such a levy amounts to satisfaction. Of course this would not be true *as in favor of a judgment debtor* in a case where he had subsequently withdrawn the property so levied upon, either with or without the consent of the plaintiff in execution. Under such circumstances he would not be permitted to set up the original levy as amounting to a satisfaction; so, too, where the levy had been subsequently relinquished by his consent, so as to allow other and junior liens to be satisfied—for in such a case the property levied upon would, notwithstanding the

relinquishment, have been applied by his own consent to the satisfaction of his other debts; and it may be that the same rule would be applicable where the relinquishment for such a purpose occurred without his consent, for even in such a case *he* would have sustained no loss by the change. It does not follow, however, that because a judgment may be held to be still subsisting as against the judgment debtor, in the cases or under the circumstances supposed, it will therefore be kept on foot as against the rights of other persons who as subsequent lien holders, or as purchasers of property under liens subsequent to that under the particular judgment so dealt with, claim that it has been satisfied as to them. This principle, highly equitable in itself, is well illustrated in the case of *Woods* v. *Toney*, 6 Wend. 564. In that case the writ had been levied upon a sufficient amount of personal property to satisfy it. The assignee of the judgment subsequently, and probably by some arrangement with the defendant in execution, received from the hands of the Sheriff the property levied upon, giving him a receipt therefor, and promising to redeliver it when he should desire it sold under the execution. Probably the property found its way back to the hands of the execution defendant—at all events, " under the circumstances of the case " the Court denied an application made by him to set aside the execution as having been satisfied by the levy. In the meantime certain lands of Toney, the defendant in execution, had been sold by him to a bona fide purchaser, and these lands having been afterwards levied upon under the judgment, it was held that *as to him* these facts amounted to a satisfaction of the judgment.

We are satisfied with the soundness of this principle, and applying it to the facts of this case, it is clear that as to all the plaintiffs the Stanly judgment must be considered to have been satisfied as of 17th September, 1866, or at all events as of October ninth following, at which time a sale of the

personal property was actually made under the several executions—that issued upon this judgment being first in its levy, and entitled to the first satisfaction. If the parties to. these judgments had the right to rearrange, as between themselves, the order in which their respective judgments should be satisfied out of the fund produced by the sale, a question which we are not called upon to determine, they certainly could not be permitted to so rearrange them as to thereby work a damage or loss to the rights of others, who were not consenting thereto. Had the proceeds of the sale been first applied to the Stanly judgment, as the statute directed, that judgment would have been thereby satisfied in fact, and the liens of all the plaintiffs would, in that case, have been prior to all others upon the building and premises in question. But the attorney who represented the Stanly judgment directed that the fund be applied in part to satisfy other judgments junior to the liens of the plaintiffs. The effect of this, should it be permitted, would be to postpone the liens of the plaintiffs without their consent, and to confer upon other persons a priority to which they had in no other way become entitled. We are of opinion, therefore, that as against the claims of those of the plaintiffs whose liens attached subsequently to the 7th August, 1866, the judgment in favor of Stanly must be considered to have been satisfied by the levy and sale of the personal property.

It is apparent that the defendant Marsden was not really or in fact the purchaser at the sale of the premises under the Stanly judgment. The money paid upon that sale was of the assets of the copartnership of Searle and the defendant Green. The name of Marsden seems to have been used by the defendant Green with a view to embarrass the controversy by his introduction into the proceeding in the assumed character of a stranger, bidding and purchasing in good faith at a judicial sale, without notice of the circumstances touching the disposition of the moneys arising from

the sale of the personal property, and as to whom, had he really occupied that position, a question more or less serious might have arisen as to the extent to which he would be entitled to be protected. The sale made nominally to Marsden was really made to the defendant Green, whose subsequent redemption from that sale, as a holder of a subsequent lien, was really a redemption from his own purchase, his attorney, and, therefore, he himself, having notice of all the facts which had occurred in reference to the application of the moneys realized by the sale of the personal property. He subsequently entered into possession of the premises under the Sheriff's deed, obtained upon that redemption.

The decree, in so far as it fixes the defendants with a personal liability, cannot be supported. The defendants Reynolds and Washburn had been discharged from their liabilities by the proceeding in insolvency, and there is no personal claim established against the other defendants by the facts appearing in the case.

The decree is, therefore, reversed, and the cause remanded, with directions to render a decree not inconsistent with this opinion; the defendant Green to pay the costs of this appeal, and all the other costs accrued in this suit up to the rendition of the final decree upon the return of the cause to the Court below.

Mr. Justice RHODES did not express an opinion.