## McCARTHY *v.* WHITE *et al.*

WHERE an action upon a promissory note, secured by a mortgage of the same
date upon real property, is barred by our Statute of Limitations, the remedy
upon the mortgage is also barred.

*Lord* v. *Morris* (18 Cal. 482) affirmed on this point.

It is not a correct theory of the Statute of Limitations that the expiration of the
period fixed by it raises a presumption of payment, and that the effect of an
acknowledgment is to rebut this presumption.    The statute is to be regarded
as one of repose, the benefit of which may be relinquished by the party inter-
ested, but cannot be taken from him without his consent.

If two or more persons are bound, the statute affords the same protection to each,
and an acknowledgment by one is not available against another, unless he
had authority to make it, either expressly given or resulting from the relation
of the parties.

The principles which govern as to the operation of the statute, and the effect of
an acknowledgment, in cases of personal liability, are equally applicable to
cases where an attempt is made to enforce a security.

A party who, subsequent to the execution of a mortgage, purchases the property
from the mortgagor, may avail himself of the Statute of Limitations as a
defense to an action for the foreclosure of the mortgage commenced after the
statute has run against the debt secured.

W. and K. owning a tract of land in common, W., in 1853, mortgaged his interest
in a portion of the tract, containing four hundred and eighty acres, to M., to
secure a note executed at the same time, and falling due March 4th, 1854.
April 3d, 1856, W. and K. entered into a written agreement for the partition
of the whole tract, by which the four hundred and eighty acres mortgaged
was to belong exclusively to K., W. stipulating to make him a deed of the
same as soon as it could legally be done.    May 10th, 1858, M. and W. had
an accounting, and signed a writing stating that there was a balance of
$1,706 60 then due on the note, and that the time of payment was extended
to January 1st, 1859.    April 8th, 1859, W., in pursuance of the agreement
of 1856, executed a deed of the premises to K., who had notice of the previ-
ous transactions between W. and M.    The agreement between W. and K. in
1856 was not recorded, nor did M. have actual notice of its existence until
after May 10th, 1858.    In an action by M. to foreclose the mortgage, in which
K. set up as a defense the Statute of Limitations : *Held,* that this defense was
available to him by reason of his interest in the property acquired under the
agreement of 1856 ; that he was not affected by the acknowledgment made
by W. in 1858 ; that the want of knowledge of K.'s purchase by plaintiff
when he received W.'s acknowledgment, and extended the time of payment,
was not material, for the reason that the period of limitation had already
expired, and that plaintiff gave no consideration for the acknowledgment.

*Held, further,* that if the debt had not been barred at the time of W.'s acknowl-
edgment, the position of the plaintiff would have been different ; that having
no notice of the agreement of purchase, if he had suffered the statute to run,
relying upon the acknowledgment, he would have been entitled to protection.

It is never presumed that a party has committed a fraud; and where fraud is alleged, for the purpose of depriving him of a right, it must be clearly made out.

Thus, in the case above stated, the lower Court having found as a fact that K. was the agent of plaintiff, and acted as such in procuring the note and mortgage, and receiving interest upon the note, but without stating more particularly the duties devolving upon him as agent, the Appellate Court refused to infer from this that his duties as agent were of a character which prevented him from contracting in relation to the property on which the debt was secured.

APPEAL from the Third Judicial District.

On the first day of March, 1853, W. F. White executed to plaintiff a promissory note for $2,400, payable one year from date, and bearing interest at two per cent. per month. To secure this note, White executed a mortgage upon an undivided one-half interest in a lot of land in Santa Cruz County, this lot being a part of the Salsipuedes Rancho, and designated upon a map of that rancho, made for the purposes of a partition, as lot "H." The mortgage was dated March first, but was acknowledged April twenty-seventh, and recorded June 9th, 1853. At the time of its execution Eugene Kelley was the owner in common with White of the lot mortgaged, and also of an adjoining lot, marked on the map lot "I," each owning equal undivided interests in the entire tract. On the second day of April, 1856, White and Kelley executed a written agreement for the division of the premises above mentioned, which, after reciting that they were jointly seized, and referring to the partition map as designating the tract thus held, proceeds : " And whereas the parties to this agreement are desirous of dividing said land, and have agreed to the following division (which agreement shall be carried out by an exchange of deeds as soon as it can legally be done) viz: the party of the second part (Kelley) agrees to deed to the party of the first part," etc., describing a part of lot "I;" "the party of the first part (White) agrees to deed to the party of the second part," etc., describing the other part of lot "I," "and also lot 'H,' stated to contain about four hundred and eighty acres." Under this agreement Kelley immediately took possession of lot "H," and has since retained it.

May 10th, 1858, more than four years having then elapsed since the note fell due, plaintiff and White had an accounting concerning it, and both signed a writing which, after a statement in the form of a debt and credit account of the interest which had accrued, and the payments made, up to April, 1858, showing a balance then due of $1,706 60, continued : " This is all that is due on said eighteenth day of April last on the note secured by mortgage, and is by the parties hereto the admitted balance.   The said McCarthy further agrees not to force the collection of the above balance before the first day of January, 1859." At the time of this trans-action plaintiff had no knowledge of the agreement made in 1856 between White and Kelley.   Deeds were executed between Kelley and White, in pursuance of their division agreement, on the eighth of April, 1859, Kelley then receiving a conveyance of lot " H," which was acknowledged and recorded, and having knowledge at the time of the previous transactions between White and plaintiff.

This action was commenced October 28th, 1859, by plaintiff to foreclose the mortgage, White and Kelley being both made parties. Kelley set up as a defense against the enforcement of the mortgage the Statute of Limitations.   The Court found the facts substan-tially as above stated ; and also found that plaintiff left the State in 1853, and was absent until the spring of 1858, and that Kelley acted as his agent in taking the mortgage, and in the management of his business during his absence.   The plaintiff had judgment in the Court below, and defendant appeals.

*W. W. Stow,* for Appellant.

I.   The agreement for the exchange of lots " H " and " I " was valid, and the exchange was a valuable consideration, making Kelley the purchaser of " H " for a valuable consideration (of course with notice of the then condition of plaintiff's mortgage) as much so as if he had paid the purchase money in coin.   (Willard's Eq. Jur. 610 ; 1 Wend. 625 ; 6 Johns. Ch. 402 ; 6 Barb. 484.)   In equity, on the execution of said agreement of April, 1856, Kelley was the beneficial owner of the whole of lot " H," incumbered with plaint-iff's mortgage.   (*Merrill* v. *Judd,* 14 Cal. 59 ; Willard's Eq. Jur. 610, and cases cited ; 6 Barb. 484, 485.)   And as plaintiff invokes

equity to foreclose his mortgage, he must consent to equitable rules being applied to the case.

The *status* of plaintiff and defendant Kelley, April, 1856, was, (in equity) : Kelley owned lot " H ;" plaintiff had a mortgage on the undivided one-half to secure the payment of White's note ; the mortgage was the incident to the debt—the debt being paid the mortgage was discharged. (*Payne* v. *Bensley*, 6 Cal. 99 ; *McMillan* v. *Richards*, 9 Id. 409–411; *Dill* v. *Byrne*, 5 Id. 455 ; *Ord* v. *McKee*, Id. 515 ; 4 Id. 224, 502 ; *People* v. *Chisholm*, 8 Id. 30 ; 6 Id. 478 ; 11 Id. 13 ; *Daly* v. *Graham*, 12 Texas, 427 ; *Sherman* v. *Dunbar*, 6 Cal. 478.) White was then (and still is) the principal debtor, and the land the surety. (Adam's Eq. ; 12 Ala. 509 ; Willard's Eq. Jur. 453.) And this emphatically so, because the mortgage constituted no part of the purchase money to be paid by Kelley in exchange of " H " for " I," nor did the agreement or White's conveyance impose (by its terms) the payment of the mortgage upon the land.

II.    Plaintiff's remedy for the foreclosure of this mortgage is barred by the Statute of Limitations. In other words, on the second of April, 1856—the date of the agreement between White and Kelley—Kelley took the land subject (used in the sense incumbered) to plaintiff's mortgage. A part of his contract, made by the statute of the State, was that the mortgage should be enforced by the third of March, 1858, or not at all. (*Lord* v. *Morris*, 18 Cal. 482.) The California statute makes no difference or distinction between the time when a debt secured by mortgage and any other debt will be barred or outlawed. (Wood's Dig. 47, sec. 17.) " Actions other than those for the recovery of real property can only be commenced as follows : within four years, an action upon any contract, obligation, or liability, founded upon an instrument of writing," etc. The note described in the complaint is an instrument in writing ; an obligation for the payment of money ; it creates a liability ; it is a contract. (*Fairbanks* v. *Dawson*, 9 Cal. 90 ; *Lord* v. *Morris*, 18 Id. 482.) The mortgage is also an instrument in writing, and of no higher grade, because it has a seal, than the note. ( *Ortman* v. *Dixon*, 13 Cal. 33–36.) The Statute of Limitations is, in this State, to be enforced on the

equity side of the Court as well as on the law side. (Angell on Limitations, sec. 467; *Chalmendelay* v. *Clinton*, 2 Jacobs & Walker's Ch. 1; 10 Wheaton, 152; *Lord* v. *Morris*, above cited.) The general doctrine is that a mortgage will outlaw, and all remedies upon it become barred by the Statute of Limitations. (Angell on Limitations, secs. 453–455, 93; Lord Thurlow, in 3 Brown's C. C. 291; *Palmer* v. *Eyer*, 6 Eng. Law and Eq. 335; *Giles* v. *Barmore*, 5 Johns. 545; *Waterman* v. *Haskin*, Id. 283; *Jackson* v. *Wood*, 12 Id. 242; *Jackson* v. *Myers*, 3 Id. 382; 9 Wheat. 497; 19 Vt. 526; 7 Paige, 465; 8 Met. 87; 3 Kelly [Ga.] 850; 6 B. Mon. 479; *Hunter* v. *Levin*, 11 Cal. 11.) A promissory note secured by a mortgage does not render it a speciality, and hence it outlaws, or is barred by the statute, like any other promissory note. (Angell on Limitations, sec. 92; *Jackson* v. *Sackett*, 7 Wend. 94; *Clark* v. *Figer*, 2 Stark. 234; 3 Eng. Com. Law; 11 Cal. 11.)

III. The remedy upon the note and mortgage having been barred, it was not renewed by the subsequent written promise of White, the mortgagor.

The land (thing) bound for the payment of the debt being the property of Kelley at the time of the new promise, White's new promise could not bind it or renew a lien once lost. " No acknowledgment or promise shall be sufficient evidence of a new or continuing contract whereby to take the case out of the operation of this statute unless the same be contained in some writing signed by the party to be charged thereby." (Construed in *Fairbanks* v. *Dawson* and *Lord* v. *Morris et al.*, above cited.)

The land (the person, thing) " to be charged " by the new promise could not sign the new promise. Who could sign for the land, so as to charge it? Clearly no one but a person holding an estate, in this instance, Kelley. White might as well attempt to create a lien on any other lands of Kelley, in which he never had an interest, as on this. (*Lord* v. *Morris*, 18 Cal. 482; Angell on Limitations, sec. 460; 7 Paige's Ch. N. Y. 465; 9 Wheat. U. S. 490; *Hope* v. *Bogert*, 1 Hilt. N. Y. 545; 7 Barb. 445; 2 Ker. 635.)

If the proposition before laid down, " that White was the princi-

pal debtor, and the land the security after the agreement of April 2d, 1856" (Willard's Eq. J. 453 ; *Lyon* v. *State Bank*, 12 Ala. 509 ; *Lowther* v. *Chappell*, 8 Id. 353) be law, then the principal could not make a new promise to bind the surety, and *vice versa.*

It seems to us White's new promise at the time it was made is like the new promise of one partner after the dissolution of the partnership, binding on the promissor, but not on his copartners. (*Van Kewen* v. *Pamlee*, 2 Comst. 532 ; *Bell* v. *Morrison*, 1 Pet. 351.)

IV.   No doctrine of equity can be invoked in favor of plaintiff to sustain his right to enforce this new promise against Kelley's land.   He parted with nothing in consideration of the new promise. He lost nothing by the new promise, because it was made after his right to enforce the old promise was barred.   He did not take the new promise in good faith, as Kelley was in possession.   He could not have taken a new mortgage or a deed from White and have been a purchaser for value without notice.   (*Hunter* v. *Watson*, 12 Cal. 363.)   He was in the State, and had a right to foreclose the mortgage before it outlawed.   No deceit was practiced on him by Kelley.   He was bound to know the law.   Kelley's title to the land accrued before the mortgage was outlawed.

*G. F. & W. H. Sharp*, for Respondent.

Plaintiff's right to foreclose the mortgage as against Kelley was not barred by the Statute of Limitations.

I.   Kelley was the attorney in fact of plaintiff, and obtained the mortgage from White as plaintiff's attorney.   Kelley is therefore estopped from setting up an adverse right or title to the mortgaged premises during the time he was acting as the attorney in fact of the plaintiff.   (See *Hostler* v. *Hayes*, 3 Cal. 306, 302 ; 8 Id. 115, 25 ; 9 Id. 205, 606 ; 1 Parsons on Contracts, 74, and cases there cited in note *d.*)

II.   The plaintiff is entitled to relief as against Kelley on the ground of fraud, and it would be against public policy and good faith to permit Kelley to defeat him.   (6 Cal. 607, 665, 673 ; 7 Id. 509 ; 8 Id. 89, 226,128 ; 9 Id. 574; 13 Id. 69, 102, 127, 170 ; 2 Greenl. on Ev., sec. 448 and note 3.)

McCarthy v. White.

III. The facts presented in the record in this case take it out of the rule adopted by this Court in construing the Statute of Limitations laid down in the case of *Lord* v. *Morris* (18 Cal. 482.)

COPE, J. delivered the opinion of the Court—FIELD, C. J. and NORTON, J. concurring.

This is an action to foreclose a mortgage executed by the defendant, White, upon certain real estate in the county of Santa Cruz. There are several defendants, and among them is one Eugene Kelley, who claims the premises under a conveyance from White, and relies upon the Statute of Limitations as a bar to the foreclosure. The mortgage debt became due on the fourth of March, 1854, and on the tenth of May, 1858, a portion of the debt having been paid, the parties had an accounting, and upon ascertaining the balance due, executed a writing by which it was agreed that payment of such balance should not be enforced until the first of January, 1859. The premises were conveyed to Kelley on the eighth of April, 1859, and the conveyance was taken by him with notice of the previous transactions between White and the plaintiff; an agreement to convey, however, having been entered into on the third of April, 1856. The Court finds that this agreement was not recorded, and that the plaintiff had no notice of it; that he left the State in 1853, and was absent until the spring of 1858; and that Kelley acted as his agent in taking the mortgage, and in the management of his business during his absence. The action was commenced on the twenty-eighth of October, 1859.

The case of *Lord* v. *Morris* (18 Cal. 482) settles the question of the application of the statute, and the only inquiry is whether the writing of May, 1858, takes the case out of its operation. There is no doubt that it does so as against White, but Kelley contends that it is ineffectual as against him, he being the equitable owner of the property under the agreement of 1856. The property is an undivided interest in a part of a tract of land, which belonged originally to White and Kelley jointly, and the object of the agreement was to provide for a partition of the land. It set forth the terms of the partition, and stipulated for an exchange of deeds, fixing no time, however, at which the exchange should be made,

but stating generally that it should be made as soon as it could be legally done.    The interest covered by the mortgage was to be deeded to Kelley, and the effect of the agreement was to vest in him a right to a deed upon the performance of the consideration on his part.    This right constituted an interest in the property adverse to the mortgage, and when the statute had run, and a right of action upon the mortgage no longer existed, it was not in the power of another to create one as against him.    The most that can be claimed for the writing is that it was an acknowledgment of the debt, and treating it as such no effect can be given to it except as between the parties.    We say this, of course, upon the assumption that Kelley is under no disability in regard to the agreement, and for the present we shall consider the case without reference to the objections taken in that respect.    For the purposes of the case, we shall assume that the acknowledgment, so far as it is operative at all, takes the case out of the statute in respect to the mortgage as well as the debt.    It was formerly held that statutes of this nature proceeded upon a presumption of payment, and that the effect of an acknowledgment was to rebut this presumption and place the debt upon its original footing.    This view is now exploded, and the statute is universally regarded as one of repose, the benefit of which may be relinquished by the party inter· ested, but cannot be taken from him without his consent.    If two or more persons are bound, the same protection is afforded to each, and an acknowledgment by one is not available against another, unless he had authority to make it, either expressly given, or resulting from the relation of the parties.    The effect of the statute in this respect is perfectly well settled, and it is immaterial, of course, whether the original liability was personal and direct, or resulted incidentally from a charge upon property.    In cases of personal liability, the doctrine, as we have stated it, is conclusively established, and the principle is equally applicable in a case of this character, where an attempt is made to enforce a security.    It is clear, therefore, that the plaintiff cannot avail himself of the acknowledgment as against Kelley, unless the circumstances of the case are such as to preclude Kelley from relying upon the agreement.    It appears that the plaintiff was ignorant of its existence, but as he parted with

nothing in consideration of the acknowledgment, he is not in a position to complain on that ground. It is not enough that he acted in good faith, and without notice. The acknowledgment cost him nothing, and his rights under it are not those of an incumbrancer for value. If the debt had not been barred, the position of the plaintiff would be different; having no notice of the agreement, if he had suffered the statute to run, relying upon the acknowledgment, he would be entitled to protection. As the debt was barred, however, he cannot claim that his rights have been prejudiced by the want of notice, for the acknowledgment gave him none which could possibly be affected by it.

The question in regard to the agency is a more difficult one; but looking solely to the findings we cannot see that Kelley is under any disability on that account. Until the mortgage was barred the agreement had no effect upon it; and so far as appears there was no conflict between the duties of Kelley as agent and his interest as a party to the agreement. An agent is not allowed to place himself in antagonism to his principal in the business of his agency, and as against the principal he can derive no benefit from contracts made by him in violation of this rule. It must appear, however, that the rule has been violated, and we are not to indulge presumptions upon the subject for the purpose of depriving a party of the fruits of his engagements. The Court finds in regard to the agency nothing but the fact of its existence, and the receipt of interest upon the mortgage debt, the particular duties devolving upon Kelley, as agent, not being stated. We cannot infer that these duties were of a character which prevented him from contracting in relation to the property upon which the debt was secured; the presumption is that they were not. It is never to be presumed that a party has committed a fraud, and where fraud is alleged for the purpose of depriving him of a right the facts sustaining it must be clearly made out. The charge here is that the agreement was a fraud upon the plaintiff and an act of bad faith on the part of Kelley, but the facts found do not show it to have been so.

The point made in regard to the absence of Kelley from the State is not properly before us, as there is nothing in the findings upon the subject.

The judgment is reversed, and the cause remanded for a new trial.

NORTON, J.—I concur in the decision of this case upon the ground that both the questions upon which there could be any argument upon principle have been decided by this Court in the case of *Lord* v. *Morris*, and that these are questions of that character that once deliberately decided, and after having stood for several years as rules to govern transactions, they should not be opened merely to consider again the weight of conflicting decisions and opposing reasons.