[Civ. No. 914.   Third Appellate District.—September 19, 1912.]

# H. H. HENLEY, Respondent, v. PACIFIC FRUIT COOLING AND VAPORIZING COMPANY, a Corporation, and GEORGE D. KELLOGG, Appellants.

ACTION FOR SERVICES AND TO ENFORCE LIEN—CONFLICTING EVIDENCE AS TO AMOUNT DUE—PROVINCE OF TRIAL COURT—REVIEW UPON APPEAL. In an action for services rendered by the plaintiff, as "refrigerating and constructing engineer," in the erection of a precooling and refrigerating plant for defendants as owners of the premises on which it was to be erected, and to enforce a lien for the amount found due, where there is no dispute as to plaintiff's qualifications, but the evidence is conflicting as to the amount due, it was the duty of the trial court to weigh and consider the evidence for both of the parties, and to determine the just conclusion to be drawn from it; and unless the record clearly shows that his conclusion is unwarranted, it is the duty of the appellate court to accept it and be governed by it.

ID.—WEIGHT OF EVIDENCE NOT DETERMINED BY NUMBER OF WITNESSES—SUPPORT OF FINDINGS AS BETWEEN TWO CONFLICTING WITNESSES.—The weight of the evidence is not dependent upon the number of witnesses. Trial courts are frequently called upon to solve questions of fact where the witnesses as to the existence of the fact are equally divided numerically. But there are almost always some circumstances cropping out which enable the court to determine the truth of the matter. It is held in this case that the findings of fact, as between two conflicting witnesses, are sustained by the evidence.

ID.—ENFORCEMENT OF MECHANIC'S LIEN.—It is held that a mechanic's lien for the amount found due, in the sum of $495, was correctly adjudged to be a lien on the premises on which the plant was erected, and on the plant itself erected thereon, and that such lien is properly enforceable.

ID.—EXCESS IN CLAIM OF LIEN NOT INVALIDATING — FINDING AGAINST FRAUD.—An excess in the claim of lien would not invalidate it under the original section 1202 of the Code of Civil Procedure, unless it was found to be "willful and intentional," and under section 1203a as enacted in 1907, or 1203 as enacted in 1911, it is provided that no mistakes or errors in the statement of demand or the amount of credits or offsets shall invalidate the lien, unless the court finds that such mistake or error was made with intent to defraud. Where the court expressed its conviction that the plaintiff did not willfully attempt to assert a lien that he did not believe he was entitled to, and no fraud is shown or is inferable from

the facts, the lien cannot be defeated merely because it turns out on the trial that the claim filed was for too much.

ID.—FRAUD NOT TO BE PRESUMED.—Fraud is never to be presumed, and before a party can be deprived of his right under a claim of fraud, it must be clearly made out.

APPEAL from a judgment of the Superior Court of Placer County, and from an order denying a new trial. J. E. Prewett, Judge.

The facts are stated in the opinion of the court.

J. Rollin Fitch, for Appellants.

Meredith & Landis, for Respondent.

CHIPMAN, P. J.—This is an action to recover judgment against the company above named for services rendered by plaintiff as "refrigerating and constructing engineer" in the erection of a precooling and refrigerating plant on certain described premises, situated in the town of Newcastle, Placer county, of which plant defendants are alleged to be the owners; also that plaintiff be declared to have a lien thereon and for the enforcement thereof. The court found that plaintiff was entitled to judgment against defendant company for the sum of $528.50 and costs, of which the sum of $495 was found to be a lien upon the buildings and plant of defendants, described in the complaint. Judgment passed accordingly, from which and from the order denying their motion for a new trial defendants appeal.

Quoting some advice given by the supreme court to trial courts, found in *Green* v. *Soule*, 145 Cal. 102, [78 Pac. 337], as to the duty of the trial court to grant a new trial where the decision is against the weight of the evidence, it is urged that "the decision in this case is clearly against the weight of evidence and against the law." It was said in the case cited: "The trial court cannot rest upon a conflict in the evidence, but must weigh and consider the evidence for both parties, and determine for itself the just conclusion to be drawn from it." We must assume that this is precisely what the learned trial judge did in arriving at a conclusion. And, unless, upon an examination of the entire record, we may be

clearly satisfied that such conclusion was unwarranted, it is our duty to accept it and be governed by it.

There is no dispute as to the qualifications of plaintiff to perform the kind of services for which he was employed. With the exception of the testimony of the witness Jones as to the date of plaintiff's arrival at the hotel in Newcastle, a fact otherwise shown, there were but two witnesses called— plaintiff, on his own behalf, and witness Groom, the admitted agent of defendant company, in its behalf. Appellants seem to overlook the fact that "the weight of the evidence" is not dependent upon the number of witnesses. Trial courts are frequently called upon to solve questions of fact where the witnesses to its existence are equally divided numerically. But there are almost always some circumstances cropping out which enable the court to determine the truth of the matter. It appeared from the testimony of plaintiff that, in March or April, 1907, he received a letter "from the manager of the company, P. M. Groom," who was in Los Angeles, stating that he was organizing a company and wanted plaintiff to "take the position of refrigerating engineer," to which plaintiff replied that he would accept the position; that Groom answered him that he would give him $5 per day and expenses; that plaintiff was in business for himself in San Francisco, and went east, waiting orders to report; that, in the early part of November, plaintiff received a telegram from Groom, to report at his office in Los Angeles, where plaintiff arrived November 10, 1907; that he immediately went to work for the company, helping to interest people in the enterprise, assisting in preparing plans, blue-prints and drawings and making estimates; that the company, after about two months, left Los Angeles and came to San Francisco, about January 14, 1908, "to commence building a plant." As to what he did for the company at San Francisco and at Newcastle he testified: "I was the engineer—I built the machine, this precooling plant that was put in at Newcastle. I was in the employ of this company all the time I was in San Francisco from about January 14th to some time in May. While in their employ in San Francisco, I superintended the building of a plant. I never done a minute's work for anybody else. Q. Now describe generally to the court the character of this plant you were engaged in, if any? A. It was a fifty-ton refrigerating

plant—two machines, duplicates—two 25-tons, connecting
with a belt wheel, the motor, and condenser, ammonia con-
denser, I made all that work, did the superintending and con-
struction and building of these compressors and shipped them
to Newcastle, and in a general way occupied about the plant
as their engineer—that is, it was built under my supervision.
Q. When you left San Francisco, where did you go? A.
After we got the plant built came to Newcastle. The Pacific
Fruit Cooling and Vaporizing Company directed me to go to
Newcastle and put in the plant and said 'Rush—rush it.'
That was the instructions I had. Q. When did you come to
Newcastle? A. Came to Newcastle along in June, 1908, I
think, as near as I recall now.'' (He arrived June 16th.)
''Q. When you came to Newcastle what did you do? A.
Went to work putting in the plant. I put the plant in the
packing-house of Mr. Kellogg—George D. Kellogg. During
all the time I was in Newcastle I was in the employment of
that company. Q. What did you have to do for the com-
pany while at Newcastle? A. Erecting the plant—this re-
frigerating plant. Q. The Court: You mean you erected it
with your own hands. A. Yes, sir, your Honor, please—I
was the engineer and directed the work. I worked not only
myself, but directed other men—I worked, physical labor, and
had other men, too, working under my direction.'' He testi-
fied that he was discharged on October 10, 1908, and his notice
of lien was filed on November 7th.

The court found that plaintiff performed forty days' work
between November 10, 1907, and January 31, 1908, as refrig-
erating and construction engineer, for the company, at the
agreed price of $5 per day, aggregating $200, which the com-
pany paid on or about January 31, 1908. Defendants attack
this finding on two grounds: First, it is contended that the
testimony of plaintiff was that he worked every day except
Sundays and holidays during this period, making seventy-one
days; that ''it was either seventy-one days' work and labor,
or no days' work and labor''; that ''there was no 'middle of
the road' proposition.'' Plaintiff testified to the character
of the work done by him during this period, for some of which
the court might well have disallowed pay, and no doubt did
so, in arriving at a just conclusion. This action of the court
was favorable to defendants and cannot be made the subject

of complaint. The court could not have disallowed the claim for the entire time without wholly rejecting plaintiff's testimony, which it did not do. Second, it is claimed by defendants that this $200 payment, made January 31st, was an advance payment on wages yet to be earned, and Mr. Groom so testified. Plaintiff testified to the contrary, and that it was money owing him by the company at the time. We think the record shows that the court had sufficient ground for accepting plaintiff's testimony on this point.

The court next found that plaintiff, by virtue of said contract of employment, performed one hundred and fourteen days' work, at $5 per day, between February 1, 1908, and June 16, 1908 (the latter date being the day when plaintiff arrived at Newcastle to commence work in installing the machinery in defendants' building and the erection of said plant), for which defendant company had paid him on account $538 and no more, leaving due plaintiff the sum of $32 at that time. These one hundred and fourteen days represent all the working days in the months embraced by the period mentioned. Defendants claim that the $200 payment of January 31st should be added to the $538, making $738 as paid. But plaintiff's testimony was that this $200 payment was for work previously performed, and the court so found.

The next finding is that, after June 16th, and to October 9th, inclusive, plaintiff worked ninety-nine days, making $495, which has support in the evidence, although it is conflicting, and that plaintiff paid $1.50 for recording his lien. These items, to wit, $32, $495 and $1.50, aggregated $528.50, for which judgment was entered against defendant company. The services of plaintiff were rendered at San Francisco, in supervising the work of constructing the machinery, and it was for this work the balance of $32 was found to be unpaid. The court, as we understand the findings and judgment, disallowed a lien for this $32. The lien, for the sum of $495, was declared upon the building in which the plant was erected and on the plant itself. This, we think, was a correct determination of the matter, although the court might properly have included in the lien the filing fee of $1.50.

It is further contended by defendants that the claim of lien, in the light of evidence, shows on its face a violation of section 1187, Code of Civil Procedure, which declares that "any

person who shall willfully include in his claim, filed under
section 1187, work or materials not performed upon or fur-
nished for the property described in the claim, shall forfeit
his lien.''    At the close of plaintiff's case defendants made a
motion to strike plaintiff's exhibit "A," the claim of lien,
"from the records in the case and as evidence, upon the
ground that the lien is fatally defective, in that there is a fatal
variance between the contract set out in the lien, its time and
terms and conditions, and the proof as shown by plaintiff.
The Court: My conviction is that the plaintiff has not will-
fully attempted to assert a lien for something he did not be-
lieve he was entitled to—as to the other points I do not think
they constitute a fatal variance.'' The motion was denied.
The alleged variance arises out of averments in the notice of
the lien which, it is claimed, were not supported by the evi-
dence, of which the following are the principal ones relied
upon: That said Groom, as agent of said company during all
the times mentioned, was agent of said company, and as such
agent employed plaintiff to work upon said refrigerating and
precooling plant about April 10, 1907; that plaintiff was to
work and labor on said plant at the rate of $5 per day "and
expenses for each and every day, commencing on November
10, 1907, on which latter day said work did commence; that
by virtue of said agreement plaintiff did render service''; and
then follows a statement of the number of days' labor per-
formed in the several months, from November 10, 1907, to
October 9, 1908, inclusive, aggregating two hundred and
eighty-eight days and amounting to $1,440 for services and
$385.50 for expenses, which $1,087.50 is claimed to be due for
"labor and services rendered and performed upon, in and
about said hereinbefore described refrigerating and precool-
ing plant and said property under and by virtue of the terms
of the hereinbefore set forth contract,'' after deducting all
just credits and offsets.    It is contended that plaintiff must
have known that he was not working on said plant, which was
erected at Newcastle after June 11, 1908, when he was em-
ployed at Los Angeles and at San Francisco prior to that
date; that the court disallowed all claim for expenses, which
shows that plaintiff must have known he was not entitled to
such claim; that the court allowed plaintiff's claim for a less

number of days than as claimed and found that plaintiff was entitled to a lien only for services after June 15, 1908.

Section 1203, Code of Civil Procedure, provides: "No mistake or errors in the statement or demand, or of the amount of credits or offsets . . . shall invalidate the lien, unless the court finds that such mistake or error in the statement of the demand, credits and offsets, or of the balance due, was made with the intent to defraud, or the court shall find that an innocent third party, without notice, direct or constructive, has, since the claim was filed, become the *bona fide* owner of the property levied upon, and that the notice of the claim was so deficient that it did not put the party upon further inquiry in any manner." Section 1203, as enacted in 1911 (Stats. 1911, p. 1319), is substantially the same as section 1203a, enacted in 1907 (Stats. 1907, p. 858), so that if it should be held that section 1203 is inapplicable because passed after the matters herein involved occurred, section 1203a, as enacted in 1907, was in force. Speaking of section 1202, before the enactment of section 1203a, the supreme court said, in *Schallert-Ganahl L. Co.* v. *Neal,* 91 Cal. 362, 365, [27 Pac. 743]: "This section of the statute . . . is penal in its character, and not only must be strictly construed, but the evidence under which it is invoked should be clear and convincing that the violation was willful and intentional." When the motion for a nonsuit was made there was no evidence before the court bearing upon the question of fraud except the notice of plaintiff's claim and his testimony. Fraud is never to be presumed, and, before a party can be deprived of his right upon a claim of fraud, the facts must be clearly made out. (*McCarthy* v. *White,* 21 Cal. 495, [82 Am. Dec. 754].) The court expressed its conviction that the plaintiff did not willfully attempt to assert a lien for something he did not believe he was entitled to. We cannot say that its conclusion was unwarranted. No fraud having been shown and none being clearly inferable from the facts, the lien cannot be defeated merely because it turns out on the trial that the claim as filed was for too much. (*Barber* v. *Reynolds,* 44 Cal. 519; *Harmon* v. *San Francisco etc. R. R. Co.,* 86 Cal. 617, [25 Pac. 124]; *Continental etc. Assn.* v. *Hutton,* 144 Cal. 609, [78 Pac. 21].)

It was not error to refuse to strike plaintiff's exhibit "A," the notice of lien, from the records.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 18, 1912.