[Civ. No. 25622. Second Dist., Div. Three. May 29, 1962.]

B. AND J. CONSTRUCTION COMPANY, Plaintiff and Appellant, v. SPACIOUS HOMES, INCORPORATED, et al., Defendants and Respondents.

Ostrow & Drucker and Martin M. Ostrow for Plaintiff and Appellant.

David S. Smith for Defendants and Respondents.

FILES, J.—This is an action to foreclose a mechanic's lien on real property. Plaintiff is appealing from the judgment which awarded to it a partial recovery against the contractor, but extinguished the lien.

The complaint alleges that plaintiff and defendant Frank Britton entered into an oral agreement whereby plaintiff was to furnish labor and equipment to grade and fill in certain land; that plaintiff has performed, and that the reasonable value of the balance due is $10,282.11. The complaint further alleges that the property so improved is Tract 24980; that the claim of lien which plaintiff has recorded includes additional property, namely, Tract 23358, on which plaintiff claims no lien. The copy of the recorded claim of lien attached to the complaint states that plaintiff claims a lien on Tracts 23358 and 24980 for labor and equipment furnished to Frank Britton, that the total value of the labor and equipment is $31,388.36, of which $21,106.25 has been paid, leaving a balance of $10,282.11.

A joint answer was filed on behalf of all the named defendants, who will be referred to herein as Spacious Homes (a corporation), Stone Hills (a corporation), Ed Stone, Leo Stone, Stone and Stone, and Frank Britton. This answer admits that the property described in the complaint is owned by Stone Hills. The answer also contains a counterclaim for damages for clouding the title to Tract 23358. On this appeal the counterclaim may be disregarded as it was not specifically mentioned in the findings or judgment, and appellant makes no argument concerning it.

A joint pretrial statement signed by the attorneys for all parties states that plaintiff supplied some earth-moving equipment pursuant to an oral agreement between plaintiff and defendant Britton to grade and otherwise improve ''the said real property in issue.'' The record does not disclose any other relationship between any of the parties, except that Leo Stone testified that he is the son of Edward Stone and is ''an officer in Spacious Homes and Stone Hills and the other Stone entities.''

The joint pretrial statement lists the matters at issue and contentions as follows: ''1. Whether or not the equipment claimed by Plaintiff as having been supplied for the work described in the Complaint was actually so supplied. 2. On the equipment which was supplied, the contention of the Defendants are that there was excess time and excess rates charged by the Plaintiff for said equipment.''

The joint pretrial statement and the resulting pretrial order were a gross violation of the rules requiring that the contentions of the parties be set forth. (California Rules of Court, rules 210, 214.) As will appear, the real contentions of the parties were much more numerous and complex than this statement discloses. The pretrial order appears to have been abandoned by common consent at the trial. A fair statement of the contentions or issues, followed by plainly worded findings of fact and conclusions of law reflecting the trial court's resolution of those issues, would have resulted in a great saving of the time of this court in its effort to determine whether the judgment is based upon a proper application of the law to facts admitted or found to be true.

At the trial the evidence showed without material conflict the following.

Spacious Homes entered into a written contract dated April 6, 1959, with James S. Walker, whereby Walker was to furnish all labor, materials and equipment to brush, excavate, grade, water and compact (a) for the manufacture of 13 lots and a temporary water line on Tract 24980; (b) for the recompaction of two desilting basins located on Tract 23358; and (c) for smoothing of Weslin Avenue, all in accordance with certain specifications. Spacious Homes (described in the contract as owner) agreed to pay $27,200 for this work. Walker thereafter assigned his interest to defendant Britton, who accepted the agreement, and Spacious Homes consented to the assignment. Britton then orally contracted with plaintiff to do the work, charges to be made at hourly rates for each piece of manned equipment. Plaintiff began work in April and discontinued on July 3, 1959. Daily work tickets were prepared for each item of equipment, and these tickets were periodically summarized on an invoice and submitted to Leo Stone. From time to time Leo Stone delivered to Britton checks drawn on Stone Hills as progress payments. These payments totalled $25,361.25. Of this amount, checks totalling $21,856.25 were made payable jointly to plaintiff and Britton. Plaintiff gave defendants credit for $21,106.25.

There is a conflict in the evidence as to the hourly rates which plaintiff agreed to charge Britton, as to what rates were reasonable, as to what extra items should be included, and as to the number of hours the various machines actually worked.

The trial judge, sitting without a jury, found that the reasonable value of the work of improvement furnished by

plaintiff was $29,661.85. No specific finding was made as to the amount of the contract price between plaintiff and Britton. The court found that Britton had paid to plaintiff the sum of $21,856.25, leaving a balance due from Britton to plaintiff of $7,805.60. The judgment provided that plaintiff recover this amount from Britton, and denied plaintiff any other relief.

The manner in which the trial court arrived at a figure of $29,661.85 is not disclosed. From the evidence the court had a vast number of possible combinations of rates and items from which to select, and we cannot say that this figure, which is almost 95 per cent of what plaintiff claimed, is not supported by evidence.

The more difficult question is whether the findings support that part of the judgment which extinguishes plaintiff's lien and denies plaintiff any relief against the property.

The Code of Civil Procedure contains two sections bearing upon the forfeiture of a mechanic's lien. Section 1193.1, subdivision (k), provides:

"Any person who shall willfully include in his claim of lien filed for record pursuant to this chapter work not performed upon, or materials, appliances or power not furnished for, the property described in such claim, shall thereby forfeit his lien."

Section 1196.1 provides:

"No mistake or errors in the statement of the demand, or of the amount of credits and offsets allowed, or of the balance asserted to be due to claimant, or in the description of the property against which the claim is filed, shall invalidate the lien, unless the court finds that such mistake or error . . . was made with the intent to defraud . . . [or unless innocent third parties have been misled]."

It will be noted that section 1193.1, subdivision (k), sets apart two kinds of false claims. These are claims for work not performed on the property, and claims for materials, appliances or power not furnished for the property. To willfully include work not done or materials not furnished is said to result in forfeiture as a matter of law. However, section 1193.1, subdivision (k), applies only where there is an actual intent to defraud. (*Henley* v. *Pacific Fruit etc. Co.*, 19 Cal. App. 728, 734 [127 P. 800].)

Other errors, such as demanding an excessive price, or failing to give credit for all payments made on account, are not mentioned in section 1193.1, subdivision (k). Men frequently differ as to the value of goods and services, and the

fact that a lien claimant willfully charges more than the court finds the services are worth does not necessarily indicate fraud. (*Harmon* v. *San Francisco etc. R.R. Co.*, 86 Cal. 617 [25 P. 124]; *Schallert-Ganahl Lumber Co.* v. *Neal*, 91 Cal. 362 [27 P. 743]; *Snell* v. *Payne*, 115 Cal. 218, 222 [46 P. 1069].) Men may likewise differ honestly as to what credits are due and how payments are to be applied, and thus the fact that one willfully fails to give a credit which the court ultimately decides should have been given does not invalidate the lien, absent a finding of intent to defraud. (*California Portland Cement Co.* v. *Wentworth Hotel Co.*, 16 Cal.App. 692, 704 [118 P. 103, 113].)

The trial court made no finding that plaintiff intended to defraud or that its claim of lien contained amounts which plaintiff knew were not due. The findings do recite that the claim was willfully made, and the court found that the reasonable value was $1,726.51 less than the $31,388.36 which plaintiff claimed. Although a finding that a claim was willfully made for hours not worked might be deemed to imply an intent to defraud, a finding that plaintiff willfully failed to give proper credits, or that it willfully charged too high a price, is not a finding of fraud sufficient to support the judgment.

Defendants argue that the judgment forfeiting the lien may be supported by the following finding made by the trial court:

"IX

"Two tracts of real property were involved in the work of improvement aforementioned, and plaintiff failed to keep books or records segregating charges for labor and equipment furnished to each of said tracts, notwithstanding that plaintiff released its right to a mechanic's lien on one of said two tracts. Thereafter, and in order to try to preserve its right to a mechanic's lien for the full amount of plaintiff's claim on the tract concerning which no release had been given, plaintiff wilfully included in its claim of lien and in the within lawsuit claims for labor and equipment not furnished by plaintiff for the property on which plaintiff sought to enforce the claim of lien through the within action. . . ."

The evidence on this subject is as follows. On July 17, 1959, after all of the work had been done, Stone Hills delivered a check payable jointly to plaintiff and to Britton in the amount of $10,000. On the back of the check appeared these words: "Endorsement of this check relinquishes all

mechanic lien rights and all labor lien rights for labor and materials furnished on Tract 23358, Los Angeles." Both Britton and plaintiff endorsed the check. On September 4, 1959, plaintiff recorded its notice of lien which stated that a balance of $10,282.11 was due on Tracts 23358 and 24980. When the complaint was filed December 1, plaintiff alleged (and still contends) that $10,282.11 was and is due on Tract 24980 alone. Defendants' argument is that if plaintiff originally claimed a certain amount due on two tracts, some of that money must have been due on each; and when plaintiff later claimed the same amount to be due on one tract alone, it was necessarily claiming a lien on one tract for work done on the other. This deduction is not supported either by logic or by the evidence.

Where a contractor undertakes to grade a "lot or tract of land" he has a lien upon the entire "lot or tract." (Code Civ. Proc., § 1184.1; *Warren* v. *Hopkins,* 110 Cal. 506 [42 P. 986]; *cf. Hendrickson* v. *Bertelson,* 1 Cal.2d 430 [35 P.2d 318].) In this case plaintiff commenced work under an oral contract to grade a single parcel. At the beginning plaintiff did not know that the legal description spoke of two tracts. There was no physical boundary. Plaintiff recorded its time worked for the job as a whole, and made no segregation as to particular areas. Plaintiff was therefore entitled to a lien on the entire property until plaintiff had been paid for all of its work of improvement. When Stone Hills tendered a check containing a partial release, it was asking for something which plaintiff was not obliged to give. Up to this point, so far as the record shows, no one had segregated the costs as between the two portions, and it was not possible to do so except arbitrarily. The words on the $10,000 check were apparently an offer to apportion the cost of the improvement in such a way as to give Stone Hills the benefit of a lien-free area. The normal import of such an agreement would be to allocate some of the money theretofore paid as full payment on Tract 23358, and to consider the unpaid balance as entirely attributable to Tract 24980. The alternative interpretation—that plaintiff voluntarily released its lien on Tract 23358 knowing that money was still owing on that tract—is so improbable that we cannot say that such an intention is implied.

Plaintiff was of course wrong in claiming a lien on both tracts in the recorded notice, but the wrong was against Tract 23358, not against Tract 24980. The evidence therefore does not support the second sentence of the trial court's Finding IX

that plaintiff included claims for labor and equipment not furnished on Tract 24980.

Defendants' second theory is that the judgment is supported by the following portion of Finding IX:

"Further, plaintiff included in its claim of lien which it caused to be filed of record and in the within lawsuit a claim for moneys, part of which moneys plaintiff had in fact received, but which plaintiff nonetheless wilfully included in its claim of lien caused to be filed of record and claimed in the within lawsuit, and concerning which moneys plaintiff did not credit defendants."

Defendants seeks to support this finding by pointing to the evidence that Stone Hills gave to Britton checks totalling $21,856.25 payable to Britton and plaintiff jointly, and that plaintiff gave Stone Hills credit for only $21,106.25, and allowed Britton to keep the other $750. The court did not find any intent to defraud unless fraud is a necessary consequence of a "willful" failure of one payee to give credit for the full face amount of a joint check. No such legal conclusion is required.

When an owner makes a check payable jointly to a contractor and a materialman, the payees should ordinarily understand that the owner's intention is that the money be used to discharge the lien rights of the materialman. (*Westwood Bldg. Materials Co.* v. *Valdez,* 158 Cal.App.2d 107 [322 P.2d 79].) However, the intention of the parties is a question of fact, and it is not necessarily improper for the contractor to retain the proceeds of such a joint check, keeping alive the materialman's claim. (See *J. S. Schirm Co.* v. *Rollingwood Homes Co.,* 56 Cal.2d 789 [17 Cal.Rptr. 1, 366 P.2d 444]; *Petaluma Building Materials, Inc.* v. *Foremost Properties, Inc.,* 180 Cal.App.2d 83 [4 Cal.Rptr. 268].) In the present case Stone Hills made progress payments from time to time, but the record does not reveal how the amounts were being calculated, nor does it show that plaintiff was told how the amounts of the checks were determined. The payments were apparently not based on plaintiff's invoices. The original Spacious Homes-Walker contract contained specific provisions for progress payments, but the parties apparently were not following that. Plaintiff's manager, Kaldenberg, testified that when a joint check dated April 24 for $2,306.25 was received, plaintiff only had approximately $1,800 in rental earned, so he allowed Britton to retain $500 while plaintiff received and credited $1,806.25. He gave a similar

explanation with respect to a $2,550 check, of which Britton was allowed to retain $250. It was not necessary that the trial court accept plaintiff's explanation, but the evidence is significant because the trial court did not make a finding that plaintiff acted in bad faith or intended to defraud.

 Defendants' final theory is built upon the curious language in the last sentence of Finding IX and the first sentence of Finding X, as follows:

"Further, plaintiff gave to the defendant Britton an incentive to said defendant to permit plaintiff to make excess charges against said property and the other defendants through excess rates charged and excess time involved in the furnishing of the labor and equipment.

## "X

"Plaintiff caused to be filed of record in the office of the County Recorder of the County of Los Angeles a claim of lien covering both tracts aforementioned, and including a claim for moneys based upon said incentive to Frank Britton aforementioned, and without allowing the owners of said real property credits which in fact said plaintiff had received, and which plaintiff nonetheless wilfully included in its claim of mechanic's lien and which plaintiff wilfully included in its within action."

The finding that defendant Britton had an "incentive" is not a finding that plaintiff overcharged. The further finding that plaintiff made a claim "based upon said incentive" is not a finding that plaintiff overcharged. The "incentive" referred to is a state of mind of the defendant Britton. It is not helpful to find that plaintiff's claim was based on Britton's state of mind. Defendants' argument assumes that these findings were intended to mean that plaintiff in fact willfully charged for hours not worked. What the trial court intended by the words "including a claim for moneys based upon said incentive" we will not venture to say. We have reviewed the record in an effort to construe this finding fairly, and we cannot conclude that the court meant thereby to say what could have been said so easily and directly: that plaintiff willfully charged for work not performed.

Defendants Britton and Stone testified that the rates were unreasonable, and that the machines were not working nearly as many hours as plaintiff charged for. Defendants' main line of defense was that plaintiff was overcharging. This was the only issue mentioned in the joint pretrial statement.

Leo Stone testified that he had watched the work and had

recorded the number of hours worked each month by each machine. His hourly totals for each machine for each month were precisely the totals invoiced by plaintiff at straight time. Plaintiff's invoices differed in that they included 125 hours of overtime. Stone calculated that plaintiff had earned a total of $21,945.92. In reaching this figure Stone omitted any overtime hours, omitted any separate charge for the foreman's wages and certain other extras claimed by plaintiff, and applied lower hourly rates than plaintiff used for the hours worked by the machines. Had the trial court believed Stone's testimony that no hours were worked except the hours he recorded, the court could not have found a total value of anything close to $29,661.85, even if the court had found in plaintiff's favor on all of the other items. The $29,661.85 is approximately equal to, but not exactly, the amount of plaintiff's invoices less the foreman's wages and the overtime wage premium. There is no doubt that the foreman worked. The dispute is whether his wages should be charged separately or absorbed as overhead.

Britton testified that the rates charged by plaintiff were unreasonable and were above the rates which plaintiff had quoted before the work began. He also testified that the machines were idle a large amount of the time for which plaintiff charged. Had the trial judge given any credence to this testimony, he could not have found that the reasonable value of plaintiff's work was an amount approximately 95 per cent of plaintiff's claim. Had the trial court found expressly that plaintiff was claiming for hours not actually worked, such a finding would have been supported by evidence, but we cannot infer such a finding in the face of the court's apparent acceptance of most of plaintiff's figures in setting the total value of the work.

Defendants argue that the "incentive" arrangement was a scheme by which Britton would assist plaintiff to build up a big lien claim against the land, after which the proceeds would be divided between them. Britton testified that plaintiff's manager, Kaldenberg, had proposed charging higher hourly rates and "he would make it up to me." Britton produced a handwritten memorandum signed by Kaldenberg, dated July 18, 1959 (after all of the work had been done and invoiced), by which plaintiff agreed to pay Britton "hourly bonuses worked on Stone & Stone job." Kaldenberg testified that this document was intended to give Britton a two per cent cash discount.

Our understanding of defendants' theory of collusive over-charging is somewhat beclouded by the fact that defendant Britton has at all times been represented in this action by the same attorney as the other defendants. Under defendants' theory, if the overcharges were fraudulent, defendant Britton was a party to the fraud. The absence of this ugly word from the findings of fact, as well as its absence from defendants' pretrial contentions, is understandable as a vain attempt by defendants to defeat plaintiff's lien by some theory not requiring actual fraud.

Defendants' theory that Britton was colluding with plaintiff to build up excessive charges seems to ignore the underlying relationships which are set forth both in the pretrial statement and the findings. The record establishes that Britton was an independent contractor, having promised to give Spacious Homes a complete job for a flat price of $27,200. Thus Spacious Homes (or Stone Hills, the owner) was obligated to pay the $27,200 regardless of what arrangement Britton made with plaintiff, and Britton was liable to the owner for any lien claims of his subcontractor. Any overcharge by plaintiff would fall directly upon Britton, and none of the financial dealings between plaintiff and Britton would concern the owner so long as plaintiff received an amount equal to the reasonable value of its services. It is of course possible that some of the parties abandoned their original relationships and joined in a scheme to defraud, but the findings of fact do not say so.

It would appear that the trial court based its decision upon the erroneous legal theory that the improper mention of Tract 23358 in the claim of lien, the failure to give credit for $750, and the demand for an excessive amount of money, without a finding of intent to defraud, justify forfeiture of the lien.

The judgment is reversed. The purported appeal from the order denying the motion for new trial is dismissed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied June 27, 1962, and respondents' petition for a hearing by the Supreme Court was denied July 25, 1962. Peters, J., was of the opinion that the petition should be granted. Dooling, J.,* participated in place of Traynor, J.

---

*Assigned by Chairman of Judicial Council.