[S. F. No. 14379. In Bank.—January 26, 1932.]

THE GIANT POWDER COMPANY CONSOLIDATED (a Corporation), Appellant, v. FIDELITY & DEPOSIT COMPANY OF MARYLAND et al., Respondents.

T. J. Laffey, Samuel T. Bush and Norman T. Mason for Appellant.

Robert M. Searls, Redman, Alexander & Bacon and Humphrey, Searls, Doyle & Macmillan for Respondents.

SHENK, J.—This is an appeal by the plaintiff from a judgment in its favor against the defendants Robert B. Muir and R. C. Storrie & Co., for the sum of $1810.39, and in favor of the defendant surety companies in an action to recover from all of the defendants the sum of $79,935.64.

In the early part of 1925 the Feather River Power Company was the owner of Buck's Creek Project in Plumas County. On October 30, 1925, R. C. Storrie & Co., a copartnership composed of Robert B. Muir and Robert C. Storrie, entered into a contract to construct for the owner a hydroelectric plant for the sum of $7,691,889. This contract, together with a bond executed by the defendant surety companies, as required by section 1183 of the Code of Civil Procedure, was duly filed. Prior to the execution of said

bond the contractors promised the defendant surety companies that they would purchase powder and concrete to be used in the performance of the work from parties who would agree to waive all claims of lien against said work and who would also agree to look only to the contractors for payment of their claims for such material. The bond was executed by the surety companies in consideration of said promise on the part of the contractors. On July 7, 1926, the plaintiff executed an instrument addressed ''To Whom it May Concern'', and certifying that the plaintiff had that day extended to R. C. Storrie & Co. a powder credit of $96,000, said powder to be used on the Buck's Creek Project under contract with the Feather River Power Company, and further certifying that ''we hereby waive all material lien rights against said Buck's Creek Project and look only to R. C. Storrie & Company for the payment of all powder furnished by us''.

Prior to October 25, 1927, the plaintiff had furnished to the contractors powder of the value of $75,081.13. The plaintiff then became apprehensive concerning the contractors' financial condition and demanded settlement of the account. At that time the contractors were the owners of an apartment house property in the city of Chicago, held by them at a valuation of $850,000, but subject to an encumbrance of $500,000. After negotiations and at the request of the plaintiff, the defendant R. C. Storrie & Co. executed a promissory note payable to the plaintiff in the sum of $78,394.86. This promissory note was in the form known as a judgment note under the laws of the state of Illinois. By its terms judgment was confessed in the amount of the principal and interest in the event of nonpayment. Payment thereof not having been made, the plaintiff, in January, 1928, instituted an action in Cook County, Illinois, for a recovery on said note. Thereafter judgment for the plaintiff was duly entered in said action against the defendant, R. C. Storrie & Co. for the amount of the principal and interest on said note. The proceedings, if any, taken to satisfy said judgment are not disclosed, but it is conceded by the plaintiff that said judgment became a lien on the Chicago real estate.

Notwithstanding its waiver of all of its material lien rights under the law of this state, and notwithstanding its

acceptance of said promissory note, which had been reduced to judgment, the plaintiff thereafter commenced this action against the contractors and their sureties to recover the reasonable value of all of the powder furnished by it to the contractors on said work. Included in the amount sought herein is the sum of $1540.77, representing the value of the powder furnished the contractors after the execution of said promissory note.

Separate answers were filed by R. C. Storrie & Co., the contractors, and by the surety companies on said bond. The contractors pleaded as defensive matter the promissory note and judgment thereon as payment, also the written waiver and agreement of the plaintiff. The defendant surety companies stand on said waiver and agreement as a defense and, although not specifically pleaded by them, they contended before the trial court and now argue with convincing force that the defense of payment on the part of their principal was available to them without special plea, on the theory that without proof by the plaintiff of the existence of a debt against the principal there can be no valid judgment against the sureties.

After trial without a jury the court found against the defendants Storrie & Co. in the sum of $1540.77, with interest thereon to date of judgment, and in favor of the defendant surety companies, and entered judgment accordingly. The plaintiffs appeal from the whole of said judgment.

The court found that the explosives furnished by the plaintiff prior to October 25, 1927, were paid for by the promissory note executed by R. C. Storrie & Co. and the judgment entered pursuant thereto. The plaintiff contends that the court was in error in finding and concluding that the promissory note and judgment thereon constituted payment.

It has been held that the mere execution and delivery of a promissory note representing the value of materials or labor furnished in the course of the construction of an improvement does not discharge the indebtedness or release the principal or the sureties on the original indebtedness. (*Hammond Lumber Co.* v. *Richardson Building & Engineering Co.*, 209 Cal. 82 [285 Pac. 851].) But it is well settled that if the promissory note be given and received, with an agreement that the note is to constitute payment of the

original indebtedness, the original debt is satisfied by the acceptance of the note. (*National Lumber Co.* v. *Whalley,* 162 Cal. 224 [121 Pac. 729]; *Kress* v. *Tooker-Jordan Corp.,* 103 Cal. App. 275 [284 Pac. 685].) ▮ The evidence in the present case is sufficient to support the finding of the trial court that the execution and delivery of the promissory note constituted payment of the original indebtedness. The evidence on this issue was conflicting, but the finding is supported by the testimony of Mr. Brehme, the president of the Feather River Power Company, and of Mr. Storrie, with reference to what took place in New York in October, 1927, in an interview at which Mr. Brehme, Mr. Storrie and Mr. Laffey, the latter being general counsel of the plaintiff corporation, were present and in which it was agreed in substance and effect that upon the execution and delivery of said promissory note the plaintiff would look to the apartment house property in Chicago for satisfaction of the note and that the contractors would cease to be bothered in California with reference to the account. Mr. Laffey gave a different version of the conversation but his evidence served only to create a conflict in the evidence.

The present action is not one to enforce the Illinois judgment nor for a deficiency after recourse to the property in that state. It is based on the original indebtedness and that debt having been merged in the note and judgment under the agreement found to have been made and with the intention that the original debt should be discharged, the plaintiff is now in court on a claim which has no further existence in so far as it pertained to the original indebtedness of the contractors to the plaintiff to the extent represented by said promissory note. (*Ohio Cultivator Co.* v. *Dunkin,* 67 Okl. 68 [168 Pac. 1002].)

The plaintiff does not contend specifically for a right of recovery against the defendant surety companies for the value of the powder furnished after October 25, 1927, but urges its claim against them for the value of the full amount furnished. It bases its contention upon the provisions of section 1187 of the Code of Civil Procedure wherein it is provided that the bond there required must be "conditioned for the payment in full of the claims of all persons performing labor or furnishing materials to be used in such work". It is insisted that the word "claims" in-

cludes not only the original demand or open account, but also includes the claim on the promissory note taken in lieu of the original claims. The argument proceeds on the erroneous assumption that the lieu note was taken without the coexisting agreement that it should constitute payment of the original debt. In the presence of such an agreement, as found by the court, the argument necessarily fails.

The Mechanic's Lien Law applies to claims for labor and material furnished and to be used in the work contemplated by the contract. Here the plaintiff is pressing a claim for material which has been extinguished by agreement of the parties. In effect it is a claim arising out of the substituted promissory note and judgment which now has no relation to any claim under the Mechanic's Lien Law.

Since the original indebtedness to the extent of the amount of said promissory note had been paid, the trial court was correct in finding for all of the defendants to that extent, without regard to the existence of said waiver and agreement of July 7, 1926. There still remained the claim of the plaintiff for explosives furnished to the contractors after the execution of said promissory note. There is and can be no contention that the value thereof was included in the note. The obligation to pay for the same rested on the contractors and the court properly rendered judgment against them for the value thereof. It remains to be determined whether the sureties are likewise bound for that item, or were never liable therefor by reason of the execution of said waiver and agreement of July 7, 1926. On this issue the court found that the labor and material bond was executed by the defendant surety companies in consideration of the promise on the part of their principal that they would purchase powder used in the performance of said work "from parties who would agree to waive all claims of lien against said work and who would agree to look only to said R. C. Storrie & Co. for payment of their claims for such material". The court concluded that by the execution of said waiver and agreement the plaintiff had waived its lien rights; that this waiver and agreement constituted a waiver of the right to sue on the bond, and that the plaintiff was estopped from looking to the sureties for payment. It is contended that the court was in error in so concluding.

It will be noted that the waiver and agreement of July 7, 1926, waives "all material lien rights" against the principal and also agrees to "look only to R. C. Storrie & Company for the payment of all powder furnished by us". This waiver and agreement was executed pursuant to the arrangement with the surety companies and the trial court properly held that its contemplated execution was a part of the consideration for the execution of said bond. All parties interested were notified of the execution thereof. The plaintiff was not bound to execute it, and when executed it must be deemed to have been an integral part of the contract between the principal on the bond and the plaintiff. As such it necessarily inured to the benefit of the sureties under their contract with their principal. The consideration moving to the plaintiff for its execution was the right, which it could exercise at its option, to furnish explosives to the contractors in pursuance of the contract between the latter and the sureties. No formal acceptance of the terms thereof was required on the part of the sureties, for it was in accordance with their contract with their principal and the sureties had notice of and relied upon its execution.

It is assumed that the mere failure of a materialman to file a claim of lien as provided by said section 1187 would not constitute a waiver of his right to pursue his claim against the sureties on the contractors' bond, as was held in *General Elec. Co.* v. *American Bonding Co.*, 180 Cal. 675 [182 Pac. 444]. And a written waiver of lien rights would not of itself constitute a waiver of the right of action against the sureties. (*Fraters G. & P. Co.* v. *Southwestern P. Co.*, 200 Cal. 688 [254 Pac. 1097].)

But no good reason has been advanced by the plaintiff, and we have discovered none, why the materialman may not waive his right to the lien and his rights as against the sureties on the contractors' bond and agree to look only to the contractors for payment. Both rights are intended by the statute for his benefit. As to the lien right, he may waive it by failing to perfect it as provided by the statute, or he may, as here, waive it in writing. It would seem to follow necessarily that he could waive his rights against the sureties on the contractors' bond in the same manner. Here the waiver as to both was in writing. The document was executed pursuant to the contract between

the contractor and the sureties. The sureties wrote the bond in contemplation of and in reliance upon its execution. The plaintiff accepted the benefit thereunder, viz., the right to sell the explosives under the conditions imposed, of which conditions the plaintiff had full knowledge. The waiver and agreement must therefore be deemed to have been supported by a sufficient consideration and be given effect. (See *Kennedy* v. *National Surety Co.*, 111 Cal. App. 306 [295 Pac. 359].) To hold otherwise would be to convict the contractors of a breach of their contract with their sureties and permit the plaintiff to derive an undue advantage from a position voluntarily assumed by it.

It appears that when the bond was executed the surety companies took an assignment of the assets of the contractors consisting mainly of equipment to the value of about $200,000. This equipment remained in the possession of the contractors and was used in the development work. By such use it was reduced in value to about $20,000. Later it was damaged by fire and $3,000 was collected by the contractors as insurance, no part of which was received by the sureties. It is contended that the trial court failed to find on these facts and that such failure was reversible error. This contention is advanced by reason of the provisions of section 2824 of the Civil Code. But that section can have no application to the plaintiff's case for the reason that the contractors' bond did not, at any time, inure to the benefit of the plaintiff because of the latter's agreement that it would look only to the contractors for payment. A finding on the subject of indemnity was therefore unnecessary. No other points require discussion.

The judgment is affirmed.

Seawell, J., Richards, J., Curtis, J., Preston, J., Langdon, J., and Waste, C. J., concurred.