[Civ. No. 19502.   First Dist., Div. One.   July 26, 1963.]

PASCAL DISTEFANO, Plaintiff and Appellant, v. CHARLES W. HALL et al., Defendants and Appellants.

.Vogel & Martin, Cyril Viadro and Bernard J. Vogel, Jr., for Plaintiff and Appellant.

Reeser, Farrow, Barton & Barton and Harold R. Farrow for Defendants and Appellants.

MOLINARI, J.—All of the parties to this litigation have appealed from the judgment in an action brought to foreclose a mechanic's lien. In essence, there are three appeals: by plaintiff; by defendants Charles W. Hall and Dorothea Fabian (hereinafter referred to as Hall); and by defendants Carl L. Dozier and Winifred Dozier (hereinafter referred to as Dozier).

### Statement of the Case.

Plaintiff filed an action against Hall and Dozier for the foreclosure of a mechanic's lien upon certain real property.[1] The complaint alleges that plaintiff, as a licensed general contractor, entered into a written contract with Hall and Dozier to furnish and deliver materials and perform labor in the construction of an apartment house building; that he furnished labor and materials in the construction thereof to the value of $158,458.05, of which only $30,000 was paid, leaving a balance due in the sum of $128,458.05; that said agreement provided for the payment of reasonable attorney's fees in the event suit was brought to enforce its terms; that the sum of $5,000 is a reasonable attorney's fee; and that a claim of lien was duly and timely recorded.

Dozier answered by way of general denial. Hall also answered by way of a general denial and, in addition, filed a counterclaim wherein it was alleged that Hall and Dozier had entered into a written agreement with plaintiff whereby the latter agreed to supervise the construction of a 22-unit apartment house in accordance with plans and specifications furnished by Hall and Dozier, whereby plaintiff agreed to make good for any loss or damage for defective workmanship, and whereby it was agreed that if any party was required to bring an action to enforce the terms of the contract the losing party was to pay to the successful party his costs and reasonable attorney's fees. The counterclaim alleged that plaintiff negligently supervised the construction of the building so as to cause said building to be completed in a defective

---

[1]While the complaint appears to be essentially one to foreclose a mechanic's lien, it also prayed for a personal judgment against defendants. The pretrial order designates the complaint as one to foreclose a mechanic's lien and also for a personal judgment.

manner in that that neither the roof nor exterior walls of said building were weathertight; and that as a proximate result of plaintiff's negligent performance of his contractual duties the interior of said structure and the contents thereof were damaged by the elements in the amount of $30,000. It was also alleged in said counterclaim that the sum of $6,000 is a reasonable amount for attorney's fees to be allowed in the action. Hall's answer was subsequently amended to allege two additional defenses, by way of counterclaim, designated as second separate and third separate defenses, respectively. The substance of the second defense is as follows: that plaintiff falsely, maliciously and with intent to defraud, represented to Hall and Dozier that the said apartment building could be built for a total labor cost of 75 cents per square foot, exclusive of the labor to be expended by subcontractors and exclusive of the labor necessary to construct the foundations of said building; that in truth and in fact it was impossible to construct an apartment house in conformity with the plans and specifications for less than 90 cents, exclusive of the items excluded; that Hall and Dozier believed said representations and in reliance thereon entered into the aforementioned agreement; that in said agreement it was provided that plaintiff was to receive a fee of $8,000 for his services in personally supervising the construction of said building, and the sum of $4,872 for the construction of the foundation for said building as an independent subcontractor; that subsequently plaintiff falsely induced Hall and Dozier to execute the last paragraph of said agreement with reference to additional work on "extras" desired by the latter so as to allow plaintiff to expend labor cost without limitation; that in his bill of particulars plaintiff alleged the labor cost for the construction of said building to be $31,000, exclusive of the labor of subcontractors, but including the labor expended for the foundation; and that the reasonable value of said labor is not in excess of $16,650. The third separate defense is substantially in the same form as the second defense, excepting that it alleges that in said agreement plaintiff agreed that the labor costs would not exceed $14,000; that said labor costs exceeded the sum of $30,000; and that the reasonable value of said labor is not in excess of $16,500. A bill of particulars, demanded of plaintiff, was furnished and filed showing itemizations totaling $141,516.53[2] less credits of $60,-

[2]Labor, $30,573.58; material paid for by A & Dee Construction, $35,711.38; material "allegedly paid for by defendants," $27,348.56;

285.11,[3] leaving a claimed balance due of $81,231.42.

Subsequently, and approximately one month later, plaintiff furnished and filed an amended bill of particulars showing itemizations totaling $178,661.12[4] less credits in the sum of $105,148.75,[5] leaving a claimed balance due of $73,512.37. A bill of particulars was demanded from Hall but none was furnished. A jury trial was demanded by Hall and Dozier.[6]

At this posture the proceedings were such that the cause should have proceeded to trial before a jury on all issues with the exception of the equitable issue as to whether or not plaintiff had recorded a valid mechanic's lien and whether he was entitled to a foreclosure of said lien. The parties, however, stipulated that the question of attorneys' fees should be determined by the trial court and not by the jury. The cause proceeded to trial before a jury and a verdict was returned in favor of plaintiff and against Hall for $28,500. Judgment was thereupon entered upon the verdict.[7] Thereafter, and

material, $39,539.29; taxes $343.72; and cost of supervision in accordance with agreement dated March 10, 1958, $8,000.

[3]Paid on labor, $2,936.55; paid on account, $30,000; and material ''allegedly paid for by defendants,'' $27,348.56.

[4]Labor, $27,996.51; material and miscellaneous paid for by A & Dee Construction Company, $37,322.62; material ''allegedly paid for by defendants,'' $72,212.20; cost of supervision in accordance with written agreement dated March 10, 1958, $8,000.

[5]Reimbursement on labor, $2,936.55; paid on account, $30,000; material ''allegedly paid for by defendants,'' $72,212.20.

[6]An action to foreclose a mechanic's lien is a suit in equity and a party thereto is not entitled to a jury trial. (*Curnow* v. *Happy Valley Blue Gravel etc. Co.*, 68 Cal. 262, 264 [9 P. 149]; *Coghlan* v. *Quartararo*, 15 Cal.App. 662, 666 [115 P. 664]; *Comastri* v. *Burke*, 137 Cal.App.2d 430, 436 [290 P.2d 663].) However, where a personal judgment is sought against the defendant in such an action a jury trial is proper. (*Coghlan* v. *Quartararo, supra.*) Moreover, even though the case involves equitable principles, if it is one where the common-law courts could and would grant relief, the right to trial by jury is preserved. (*Ripling* v. *Superior Court*, 112 Cal.App.2d 399, 402 [247 P.2d 117]; *Dills* v. *Delira Corp.*, 145 Cal.App.2d 124, 128 [302 P.2d 397].) Accordingly, if a complaint states two complete rights of action, one legal and one equitable, a jury trial may be obtained upon the issues raised by the legal cause. (*Connell* v. *Bowes*, 19 Cal.2d 870, 871 [123 P.2d 456]; *Hutchason* v. *Marks*, 54 Cal.App.2d 113, 118-119 [128 P.2d 573].) Also, a party is entitled to a jury trial on the legal issues of fact raised by a cross-complaint, even though the complaint stated a cause cognizable only in equity. (*Hutchason* v. *Marks, supra*, p. 119.) Where a jury is called to try equitable issues, it merely assists the trial court and acts in an advisory capacity; and the court is not bound by the findings of the jury. (*Bettencourt* v. *Bank of Italy*, 216 Cal. 174, 179 [13 P.2d 659]; *Dills* v. *Delira Corp., supra*; *Cutter Laboratories, Inc.* v. *R. W. Ogle & Co.*, 151 Cal.App.2d 410, 418 [311 P.2d 627].)

[7]This judgment was entered by the clerk on his own motion. He was without authority to enter a judgment at that time because there were

without the taking of any further evidence, the trial court made its findings of fact and conclusions of law. The substance of the said "Findings of Fact" is as follows: that plaintiff is a licensed building contractor in this state; that Hall is the owner of the land therein described; that plaintiff entered into a written agreement with Hall and Dozier whereby plaintiff agreed to furnish labor and materials and to erect an apartment house for said defendants upon said land, according to certain plans, for a sum equal to the actual cost to plaintiff for materials and supplies used in said construction, plus the sum of $8,000 as compensation for services in supervising the construction of said building; that plaintiff supervised the construction of said building, supplied labor, furnished materials therefor, and completed and finished said building; that the balance due from "defendants to plaintiff under said written contract, after deducting all credits and all sums as and for damages sustained by defendants as alleged in their answer and counterclaim is the sum of $128,500.00";[8] that in addition to the said sum of $28,500 there is still due and owing for materials and labor used and furnished in the construction of said building the sum of $14,843.85 "for which defendants herein are solely responsible and obligated to pay any amount or portion of said sum"; that the sum of $4,000 is a reasonable sum to be awarded as and for plaintiff's attorney's fees; and that plaintiff filed for record a lien and notice of lien provided for by law. From these findings of fact the court concluded that plaintiff is entitled to a judgment against Hall for $28,500, together with $4,000 attorney's fees, and that he is entitled to foreclose his lien upon the real property described in his complaint "in the sum found due to him." The court below further concluded that plaintiff "is in no way obligated to pay" the aforementioned sum of $14,843.85, and that said obligation was the sole responsibility of "defendants herein." Judgment was thereafter entered in accordance with said findings of fact and conclusions of law. It should be here noted that the said verdict, judgment on

equitable issues and the issue of attorneys' fees which the court alone could determine and which had not then been determined. The said judgment was therefore premature and of no effect because the trial of the action had not been concluded. (See *Farrell* v. *City of Ontario*, 39 Cal.App. 351, 359 [178 P. 740].)

[8]This is obviously a typographical error. The figures should be $28,500 as this is the amount found to be due by the jury and is the principal amount which the trial court concluded and adjudicated was due and owing other than the sum of $4,000 awarded as counsel fees.

the verdict, findings and conclusions, and the trial court's judgment do not make any reference to any adjudication for or against Dozier. We shall hereafter allude to this circumstance in our discussion of Dozier's appeal.[9]

### The Facts

A written agreement entitled "Building Contract," reciting that it was made on March 10, 1958, was entered into by and between Hall and Dozier, who are designated therein as "Owners," and plaintiff, who is therein called the "Contractor." At the trial each of the parties introduced in evidence his copy of said agreement.[10] Each copy was in typewritten form with the signatures of the parties appearing on the last page thereof and at the end of the typewritten portion. On the last page of each copy of said agreement and below the aforesaid signatures there is an undated handwritten addendum also signed by all of the parties to the agreement. This addendum reads as follows: "Contrary to any promises hereinabove stated, Owners shall pay to Contractor the actual costs to Contractor for all labor, materials and other proper charges for the work to be performed in accordance with this agreement, in addition to the sum of $8,000.00 as referred to in Paragraph Seven (7) of this Agreement." It is undisputed that this addendum was executed at or about the same time as the typewritten portion of the said agree-

---

[9]We shall hereafter allude to such other pertinent portions of the record as shall be applicable to the matter then under discussion.

[10]The pertinent typewritten portions which appear on both exhibits and concerning the existence of which there is no dispute, are as follows:

"1. Contractor agrees to give direct personal supervision of the construction of a Twenty-two (22) Unit apartment building to be located at 2346 Sutter Avenue, in the City of Santa Clara, County of Santa Clara, State of California, owned by the Owners, in accordance with certain plans and specifications furnished by the Owners, duplicate copies of which are attached to this agreement, and are initialed for identification by the parties hereto."

"4. The Contractor agrees to furnish efficient business administration and direct personal supervision of the work at all times during its progress, using his best skill and attention, and to use every effort to keep upon the work at all times an adequate supply of workmen and materials, and to secure its execution in the best and soundest way and in the most expeditious and economical manner consistent with the interests of the Owners.

"5. The Owners agree to pay to Contractor for the work and the furnishing of materials specified in this agreement, the actual costs necessarily incurred for the proper prosecution of the work, and paid directly by the Contractor for all labor, material and other proper charges, as hereinafter specified:

"(a) Actual amounts of sub-contracts:

"1. Santa Clara Plumbing Co. Inc. bid to furnish and install, including all labor and material, all heating and plumbing, according

ment. The testimony at the trial, however, was in conflict with respect to paragraph 5(c) of the agreement which reads as follows: ''Actual costs to the Contractor for wages of all laborers, carpenters and other employees who actually perform services upon the property herein, not to exceed Fourteen Thousand ($14,000.00) Dollars. Contractor has estimated said labor cost at Fourteen Thousand ($14,000.00) Dollars, or less, and the performance of this contract at a labor cost of Fourteen Thousand ($14,000.00) Dollars, or less, is a material condition of this contract.''

The copy of the said agreement introduced in evidence by plaintiff shows two lines drawn through said paragraph 5(c) in the form of an ''X'' with the word ''out'' on the margin of the agreement opposite said paragraph, and the signatures ''C. W. Hall'' and ''Pascal Distefano'' under the word ''out.'' None of these marks or writing appears on the copy introduced in evidence by Hall. Paragraph 8 of said agreement has lines in ink drawn through each typewritten sentence thereof on each of the copies with four separate initials opposite said paragraph.[11] This paragraph reads: ''It is agreed that the Eight Thousand ($8,000.00) Dollar fee shall be paid, if possible, from loan secured by Chattel Mortgage on the rugs, and on a loan against the swimming pool. Contractor agrees that Owners shall have a reasonable time, after completion, in which to apply for and secure said loans.'' All of the parties, signatory to the contract, who testified at the trial,[12] were in accord that paragraph 8 was deleted at

to plans and specifications, for Fifteen Thousand Two Hundred Fifty and no/100 ($15,250.00) Dollars.

''2. A & Dee Construction Co. bid to furnish all labor and materials to construct the foundation, garage floors and pads for steel columns, according to plans and specifications, for Four Thousand Eight Hundred Seventy-Two and no/100 ($4,872.00) Dollars.

''Said sub-contractors are part of Contractor's organization.

''All parties hereto agree to accept said bids.

''3. All remaining sub-contracts shall be let after bid, to approved bidders, and are subject to prior approval by Owners as to all terms of said sub-contract bid.

''(b) Actual cost to the Contractor of materials and supplies used in the construction of the building to be erected, as herein provided. No purchase of materials and supplies shall be made without prior approval of Owners.''

''7. In consideration of the performance of this contract, the Owners agree to pay the Contractor, as compensation for his services hereunder, the sum of Eight Thousand ($8,000.00) Dollars.''

[11] These initials are: C.L.D., W.F.D., P.D., and what appears to be ''C.H.''

[12] Plaintiff, Pascal Distefano, Carl L. Dozier, and Charles W. Hall.

the time the agreement and the addendum thereto was executed. Plaintiff testified that paragraph 5(c) was stricken at the same time. In this regard, plaintiff testified that he objected to both paragraphs 5(c) and 8 and that the addendum in the handwriting of his attorney was executed because of said objection. When queried as to why paragraph 5(c) was not stricken out on Hall's copy plaintiff testified that Hall did not desire it stricken as he wanted to present his copy to a lending institution and it would facilitate the obtaining of a $25,000 loan if paragraph 5(c) remained in the agreement. Both Hall and Dozier testified that the addendum was executed because paragraph 8 was being deleted, but that paragraph 5(c) remained untouched at the time the agreement and the addendum were executed by all of the parties to the contract.[13] Dozier testified, moreover, that he did not know paragraph 5(c) had been stricken out until he was so informed at the trial. Hall testified that paragraph 5(c) was not stricken at the time his copy of the agreement was submitted to the bank for loan purposes and that it was not stricken out some seven months after the contract was executed (in September), and at about the time Dozier withdrew from the project. Hall stated that paragraph 5(c), which contained the $14,000 labor cost limitation, was stricken out at plaintiff's request and in consideration of plaintiff's advance to Hall of monies with which to pay off a loan secured by the land on which the apartment was being erected. Hall testified that he agreed to the striking of paragraph 5(c) in order to obtain the advance but that he did so upon plaintiff's oral representations, that while the labor costs would be in excess of $14,000 they would not exceed that sum by more than $1,000 or $2,000.[14] Plaintiff admitted the advance by him to pay off said loan on the land but denied that paragraph 5(c) was stricken as a consideration therefor or in relationship thereto. He denied further that he made the representations as to the labor cost as testified to by Hall.

Plaintiff testified at the trial that he was to act in the capacity of a general contractor upon a time and material basis plus a fee of $8,000. He stated that he got all the bids from

[13]It should be here noted that the word ''out'' opposite the deletion of paragraph 5(c) bears only the signatures of C. W. Hall and Pascal Distefano, while the deletion of paragraph 8 bears the initials of all the parties except Dorothea Fabian.

[14]The record discloses that as of the last payroll period prior to September, i.e., the August payroll, the labor cost then amounted to $23,964.29.

subcontractors and that he submitted them to Hall and Dozier for approval. It was his testimony that he expended $27,-996.51 for labor and $37,322.62 for materials making a total of $65,319.13 to which sum was to be added his fee of $8,000 making a total of $73,319.13. He stated that he had been paid a total of $33,936.55 on account, leaving a balance due him in the sum of $39,382.58. He also testified that at the time of the filing of the complaint the sum of $32,379.79 was due and owing to the subcontractors, and that while he did not then know the amounts that were still due the subcontractors, he should recover the aggregate thereof as he was primarily indebted therefor as the general contractor who had incurred the obligations.

Hall testified that he and Dozier had originally started to build the apartment as owners with the aid of subcontractors of which plaintiff was one; that certain difficulties were encountered, whereupon plaintiff was engaged to act as superintendent, to take care of the bids from subcontractors and to ''run the whole job for us.'' Both Hall and Dozier testified that plaintiff told them, at or about the time they engaged him and prior to the execution of the aforementioned agreement, that he could build the apartment at a labor cost of about 75 cents per square foot, exclusive of the labor supplied by subcontractors.

Hall and Dozier did not offer any evidence in dispute or in contradiction of the material and labor costs claimed to have been incurred or expended by plaintiff, excepting a discrepancy of $205.30 in the labor costs. Mr. Hannibal, Hall's accountant, also testified that, assuming the labor and material items were incurred by plaintiff as claimed by him, the balance due would be $38,882.58, or $500 less than that claimed by plaintiff. According to Hannibal, this sum of $500 represented a payment made on account for which plaintiff failed to give credit. Plaintiff conceded that he did receive an additional sum of $500 from Hall, but claimed that he gave it back to Hall as a personal loan.

The testimony disclosed that when Hall and Dozier did not have the monies to pay the subcontractors and materialmen these were advanced by plaintiff. Hannibal testified that at the time the complaint was filed the amount due subcontractors and materialmen was in excess of $35,000, but that the balance due at the time of trial was $10,189.41. It was Hannibal's testimony that since the filing of the complaint Hall had paid or satisfied the obligations due subcontractors

and materialmen, excepting said sum of $10,189.41, either by cash payments or in the form of promissory notes executed in favor of said subcontractors and materialmen, and that the said obligations for which promissory notes were given amounted to $11,130.01. Hall testified further that at plaintiff's urging he procured the withdrawal of Dozier from the project in September of 1958, and that he and plaintiff orally agreed with Dozier that the latter would not be held responsible for anything connected with the building project "then or in the future." Dozier testified to the same effect. This was not denied or contradicted by plaintiff. The record discloses that Dozier gave a quitclaim deed of their interest in the property to Hall, and that a written indemnity agreement was executed by Hall holding Dozier harmless in said building transaction. Plaintiff was not a party to said indemnity agreement. Testimony was adduced from Hannibal that based upon measurements given him by Hall he computed the labor cost as incurred by plaintiff in the construction of said building to be $1.80 per square foot. A general contractor, Wayne F. Huff, testifying for defendants, stated that the labor costs for said building should have been between 93 and 95 cents per square foot; and a general contractor, Olaf M. Sundahl, testifying for plaintiff, testified that, according to the plans and specifications for said building as reviewed by him, the labor cost should have amounted to $24,747.80, exclusive of extra work, but that this cost could have been one-third higher because of the manner in which the building was constructed, particularly because the engineering specifications were completed after the plans were drawn rather than prior thereto. Further testimony was adduced by Hall as to the extent of the supervision exercised by plaintiff and also as to the time spent by the latter on the job site. In rebuttal plaintiff denied that he had represented that the labor cost would be 73 cents per square foot, or any other sum, and that he at no time quoted a price to Hall or Dozier as to the cost of construction.

Plaintiff's theory, in summary, as disclosed by his presentation of the evidence and his argument to the jury, is that he was engaged by Hall and Dozier as a general contractor on a time and material basis for the labor and materials furnished by him personally, plus a fee of $8,000, and plus the sums due subcontractors and materialmen. Accordingly, at the time of trial plaintiff claimed the balance of $39,382.58 due him personally, plus the sums which were still due and

owing to subcontractors and materialmen. In his argument to the jury counsel for plaintiff argued that this sum amounted to all of the obligations which had not been paid in cash to such subcontractors and materialmen. These amounted to the sum of $21,319.42, which consisted of two categories: the sum of $10,189.41[15] referred to as "open accounts," and the sum of $11,130.01[16] represented by the promissory notes given by Hall to several of such subcontractors and materialmen. While counsel for plaintiff did not state the total amount of his demand in exact figures, the essence of his argument, based upon the evidence adduced, is that plaintiff was entitled to recover the total sum of $60,-702.[17]

Although Hall had alleged in his answer that the reasonable value of the labor cost was not in excess of $16,650, he took the position at the trial, and his counsel so argued to the jury, that he was entitled to an offset of $17,247.52 on account of the labor expense, i.e., the amount by which the labor cost exceeded the sum of $14,000. It was Hall's contention that the $14,000 labor cost limitation was still a part of the contract, and that the deletion of paragraph 5(c), which provided for said limitation, in September 1958, was procured by plaintiff's fraud. The $17,247.52 reduction was claimed on two theories, both of which presupposed the $14,000 labor cost limitation. The first is based upon negligence, in that plaintiff negligently failed to supervise the construction properly and thus allowed the labor cost to run up to $31,247.52. The second theory is predicated upon damages for fraud, in that plaintiff procured the cancellation

---

[15]This amount includes the balance of $6,475.57 due Santa Clara Plumbing Co., Inc. (hereinafter referred to as Santa Clara). This subcontractor was specifically referred to in the building contract in paragraph 5(a)1 as a subcontractor whose subcontract in the total sum of $15,250 the owners agreed to pay to plaintiff. Said subcontractor had filed an action against Hall and Dozier for a personal judgment and for a foreclosure of a mechanic's lien it had recorded whereby it sought to recover the sum of $6,972.56, plus interest. Said action was consolidated with the present action and the two actions were tried before the same jury, counsel for plaintiff herein also appearing as counsel for Santa Clara. The jury returned a verdict for Santa Clara. No appeal has been taken from the judgment entered on said verdict.

[16]It was plaintiff's contention that notwithstanding the execution of these notes by Hall, that plaintiff was still liable for the obligations represented by said notes.

[17]While plaintiff argued to the jury that he was entitled to recover the full amount of said sum of $21,319.42, he now contends on appeal,

of the paragraph placing a $14,000 limit on the labor cost by fraud, thus causing Hall to be damaged in the amount by which the labor cost exceeded the sum of $14,000.[18] Hall contended, further, that plaintiff had not given him credit for the aforesaid payment of $500. He also urged that plaintiff was not engaged as a general contractor, but merely in a supervisory capacity as an agent for Hall and Dozier. Accordingly, argued Hall, plaintiff was not entitled to recover the amounts due subcontractors and materialmen as these were his obligations. Hall's counsel argued to the jury, moreover, that under the evidence plaintiff was not entitled to the $8,000 fee because he not only failed to supervise properly, but because he did not supervise at all.[19] In summary, it was Hall's position that there should be deducted from the sum of $39,382.58, personally expended by plaintiff, the following sums: the claimed excess labor cost in the sum of $17,247.52; the $8,000 fee; and the said $500 payment, or a total of $25,747.52, leaving a balance due plaintiff in the sum of $13,635.06.

Dozier was represented at the trial by the same counsel who represented Hall. Dozier's main contention is that he was released from the building contract by plaintiff and that accordingly he is not indebted to plaintiff. This contention was not resisted by plaintiff at the trial, nor is any error claimed on this appeal, by either plaintiff or Hall, that the judgment rendered does not include Dozier as judgment debtor.

in view of the judgment in favor of Santa Clara, that the proper sum to be considered as owing to the subcontractors and materialmen is the sum of $14,843.85, i.e., the sum of $21,319.42, less the amount due Santa Clara in the sum of $6,475.57. This sum of $14,843.85 is the amount which the trial court herein specifically found to be Hall's obligation.

[18]In his counterclaim Hall alleged as an element of fraud the representation as to the 73 cents per square foot labor cost. This contention was abandoned by Hall during his argument to the jury apparently on the basis that the $14,000 limitation amounted to a price of 93-95 cents per square foot.

[19]Hall did not allege in his answer or in any of his affirmative defenses or counterclaims that plaintiff was not entitled to the $8,000 fee, although he did allege that under the building contract plaintiff had agreed to give direct personal supervision of the work at all times during its progress and had agreed " 'to secure its execution in the best and soundest way and in the most expeditious and economical manner consistent with the interests of the Owners.' " Moreover, in his answer Hall had denied generally the allegation of the complaint. In any event, no objection to this argument was interposed by plaintiff, nor is it now contended on this appeal that this issue was not before the jury.

## The Building Contract

In the course of the trial before the jury considerable extrinsic evidence was presented by the respective parties and was received without objection, relative to the negotiations and circumstances surrounding the execution of the said agreement, the addendum thereto, and the cancellation and deletion of paragraph 5(c). No contention is made by any of the parties that the parol evidence rule was violated. The parol evidence was not introduced to vary or add to the contract, but in aid of its interpretation. In view of conflict in the evidence as to whether or not paragraph 5(c) was in the building contract when it was executed, the meaning of the language of the contract became uncertain and doubtful when read in the light of the addendum. Parol evidence was, therefore, properly introduced in aid of its interpretation, and the question of its meaning became one of fact. (*Walsh* v. *Walsh,* 18 Cal.2d 439, 444 [116 P.2d 62]; *MacIntyre* v. *Angel,* 109 Cal.App.2d 425, 435 [240 P.2d 1047]; *Tomlinson* v. *Wander Seed & Bulb Co.,* 177 Cal.App.2d 462, 469 [2 Cal.Rptr. 310].) The following language in the *MacIntyre* case is particularly applicable here: "If the facts thus adduced were undisputed, it would be the function of the court, not the jury to consider the writing in the light of such facts, but where (as in the instant case) those facts are in dispute (evidenced by testimony which is in conflict), ' "and the meaning of the contract is to be determined one way in one view of the facts, and another way in accordance with another view of the facts, then the determination of the disputed fact must be left to the jury." ' " (P. 435; citing *Coats* v. *General Motors Corp.,* 3 Cal.App.2d 340, 355 [39 P.2d 838].) Accordingly, the question as to whether paragraph 5(c) was in fact a part of the original contract or whether it was subsequently deleted pursuant to an executed oral modification was, in view of the conflict in the evidence, a fact question for the jury. (See *Miller* v. *Brown,* 136 Cal. App.2d 763, 775 [289 P.2d 572].) Moreover, when there is a question as to whether a part of a written agreement was intended by the parties to become a part of such agreement, the inquiry is directed to the *identity* of the real contract entered into between the parties. Such question is one of fact for the jury to be determined from all the circumstances surrounding its execution, and extrinsic evidence is competent to determine what constitutes the real con-

tract. (See *Shelley* v. *Hart,* 112 Cal.App. 231, 239 [297 P. 82].)

## The Jury Instructions

The questions directed to plaintiff's capacity (i.e., whether he was an agent or a general contractor), the meaning of the building contract, the nature and extent of the labor and materials furnished by plaintiff himself, the sums due and owing therefor, the amounts due and owing to subcontractors and materialmen, and the payments, satisfaction and discharge by Hall of the obligations due subcontractors and materialmen, were issues tendered by the pleadings. Evidence was adduced thereon, and arguments with respect to such evidence were addressed to the jury by respective counsel. The duty thereupon devolved upon the court to instruct on every theory finding support in the evidence. (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 623 [255 P.2d 785]; *Wilbur* v. *Cull,* 145 Cal.App.2d 41, 43 [302 P.2d 41].) While the instructions proffered by the respective parties and refused by the court[20] with respect to these issues were either faulty or inadequate in several respects so that the court was not required to give them as offered, or to modify and give them (*Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153, 158 [323 P.2d 391]), and while instructions on some of the vital issues were not submitted by any of the parties at all, the court was not relieved of the responsibility to properly instruct the jury on the controlling legal principles applicable to the case. (*Herbert* v. *Lankershim,* 9 Cal.2d 409, 482 [71 P.2d 220]; *Jones* v. *Burgermeister Brewing Corp.,* 198 Cal. App.2d 198, 204 [18 Cal.Rptr. 311]; *Thomas* v. *Buttress & McClellan, Inc.,* 141 Cal.App.2d 812, 819 [297 P.2d 768]; *Jaeger* v. *Chapman,* 95 Cal.App.2d 520, 525 [213 P.2d 404].) It was therefore incumbent on the trial court to give instructions on all the vital issues in the case so that the jury would have a full and complete understanding of the law applicable to the facts. Accordingly, in the interest of a full and complete understanding of the law applicable to the case, it was necessary that the jury be instructed on the major subjects raised by the pleadings. (*Jaeger* v. *Chapman, supra; Herbert* v. *Lankershim, supra.*) A perusal of the trial court's instructions in this case discloses not only that they were scanty, but that they failed in several respects to give

---

[20] No assignment of error is made by any of the parties to this appeal with respect to the refusal of the trial court to give any of the instructions submitted by such party.

the jury the full and complete understanding of the case to which it was entitled. We shall hereinafter point out the pertinent deficiencies in our consideration of the contentions of the parties on this appeal.[21]

[21]The substantive instructions given by the court are as follows: "Every person who furnishes labor or materials or services to the lands of others is entitled to recover for the amount of such labor and material and services, provided that such labor and material and services are performed or furnished at the request of the owner, or owners, and that such labor and material and services are charged for reasonably, or in accordance with the agreement of the parties, if there is such an agreement. The defenses offered by the Defendants are, and by way of counterclaim the Defendants allege generally three things: first, that the cost of labor was excessive, that Mr. Distefano agreed that labor would cost no more than fourteen thousand dollars, that was for the labor exclusive of foundation, and labor of subcontractors, of course. Secondly, that the services of supervision by Mr. Distefano were negligently performed; and, thirdly, that Mr. Distefano perpetrated a fraud upon the Defendants by his representations as to what the labor would cost, and that he would diligently supervise the work of construction. There appears to be no question that the material and labor and services were rendered. The labor and services were performed, materials were furnished, the apartment was built, and there are balances owing to the two Plaintiffs. The questions for you to decide are, first, how much is owing to Santa Clara Plumbing, Mr. Ruiz, and the second one is how much is owing to Mr. Distefano."

The trial court then defined the meaning of "negligence," "fraud" and "proximate cause" in general terms, and then instructed as follows:

"You are again reminded that in the original instance the burden of proving the case to start with is upon Mr. Ruiz and Mr. Distefano, and as far as the defenses that have been referred to of excessive labor costs over the fourteen thousand dollars, negligence, and fraud, the burden is on the Defendants of proving these defenses by a preponderance of the evidence, by the greater weight of evidence, by evidence of greater convincing force, and if you find that the Defendants have not proved any of these defenses by a preponderance of the evidence, they are not entitled to be considered in arriving at the balances that are due the Plaintiffs."

"With respect to Mr. Distefano, if you find that the labor costs were excessive, in determining that matter you will necessarily have to consider and determine whether there was or was not an agreement as to the fourteen thousand dollars, or if you find that there was such negligence in performing the services of supervision as to proximately cause a loss to the Defendants, or if you find that Mr. Distefano perpetrated a fraud upon the Defendants by his representations from which the Defendants suffered a loss, and if you find any one of these defenses to be true by a preponderance of the evidence and that any one of them was a proximate cause of losses to the Defendants, then you will adjust the award to Mr. Distefano in such a manner as shall appear to you to be just and equitable under all the circumstances."

"Some question has been raised as to whether Mr. Dozier was released from his obligation under the agreement at the time when Mr. Dozier conveyed all of his interest in the property to Mr. Hall. There is no evidence of the release by Santa Clara Plumbing Company. This applies only to Mr. Distefano, but under the evidence that has been presented to you, you may find, and that's one of the things you have to determine,

### Hall's Appeal

Hall appeals from the portions of the judgment which adjudged that Hall is solely liable for the aforementioned sum of $14,843.85 due subcontractors and materialmen; from the adjudication that plaintiff is entitled to a lien and to a foreclosure of the same; and from the award of $4,000 attorney's fees to plaintiff.[22]  Hall also purports to appeal from that portion of the judgment which ''[d]enied to said defendants the right to introduce evidence on their Further Separate And Distinct Defense and Counterclaim. . . .''[23]

█ We shall first consider the claim that the trial court erred in its finding that Hall was solely responsible and obligated to pay the sum of $14,843.85, which it found was still due and owing to subcontractors and materialmen. This determination was made by the trial court after the jury's verdict and without the taking of any additional evidence. As we have pointed out above, all issues in the instant case, with the exception of the existence and validity of the mechanic's lien and its foreclosure and the question of the attorneys' fees, were all for the consideration of the jury.

█ In the case at bench plaintiff sought a personal judgment against Hall and Dozier. As we have pointed out above, this determination was for the jury. It included not only the sum of $39,382.58, which plaintiff claimed was due him for labor and materials personally furnished by him, but

---

that Mr. Dozier was released from any obligation to Mr. Distefano, and if you do so find, you will indicate that simply by striking out the name of Mr. Dozier in the verdict, and I'll say more about that in a moment, just drawing a line through the name. And in the event that you should so find that Mr. Dozier was released, you may also strike the name of Mrs. Dozier, but not the name of any other party.''

''Now, in this verdict, however, remember I told you you may or may not find that by the conduct of the parties here Mr. Dozier was released of his obligation under this agreement. If you find that he was not, you will, of course, —not released— you will, of course, return the verdict against him. If you find, however, that he was released, your method of indicating that will simply be to have your foreman strike out, draw a line through the name of Mr. Dozier in the verdict, and it will be accomplished that way. And if you should do that, then you may also do the same thing with respect to Winifred Dozier.''

[22]No assignments of error have been pointed out in the briefs regarding attorney's fees, nor have they been therein mentioned. We shall, accordingly, treat this ground as having been abandoned by appellant Hall.

[23]This last-mentioned specification is not referred to nor included in the recitals of the judgment. However, it deals with claimed error having to do with the refusal to admit evidence within the issues tendered by the pleadings and is therefore encompassed within the judgment. Accordingly, it will be considered on this appeal.

also such amounts for which he might be obligated to pay as a general contractor to such subcontractors and materialmen with whom he was in contractual privity. The trial court should, in the first instance, have instructed the jury as to the relationship of a general contractor, not only to the owners, but to the subcontractors and materialmen. This it did not do. It should also have instructed the jury on the subject of agency and the effect of plaintiff's conduct as an agent.

It was also incumbent upon the court to have instructed the jury that, except as it may arise through his construction contract or by some voluntary assumption of the obligation, there was no personal liability on the part of the owner towards laborers, materialmen, or subcontractors with whom he sustains no contractual privity. (See *Stockton Lumber Co.* v. *Schuler*, 155 Cal. 411 [101 P. 307]; *Roberts* v. *Security T. & S. Bank*, 196 Cal. 557 [238 P. 673]; *Beard* v. *Lancaster Midway Oil Co.*, 72 Cal.App. 148 [236 P. 970].)

Plaintiff, in the instant case, contended that he was entitled to recover the sum of $21,319.42 due and owing to the subcontractors and materialmen to whom he was primarily liable under his contract with them. Accordingly, he was entitled to instructions on this theory. By the same token, Hall claimed that he was primarily liable for this sum, either on the theory of contractual privity or on the theory of assumption of the obligation, or both. Hall, too, was entitled to appropriate instructions. Of this sum of $21,-319.42, the sum of $6,475.57 was represented by Santa Clara's claim. Santa Clara was litigating its claim in the same action where it, too, was seeking a personal judgment against Hall and Dozier. The contractual relationship between Santa Clara and Hall and Dozier, if any, should have been defined to the jury, as well as the effect of Santa Clara's recovery of a personal judgment against the owners upon plaintiff's claim against such owners. Moreover, Hall claimed that said sum of $21,319.42 included claims aggregating $11,130.01 for which he had given promissory notes, and that, therefore, he, and not plaintiff, was liable therefor. Plaintiff, on the other hand, contended that notwithstanding the giving of such notes, he was still primarily liable for the claims represented thereby. The mere execution and delivery by the owner of a promissory note representing the value of materials or labor furnished in the course of construction of an improvement does not discharge the indebtedness, or release the general contractor who is primar-

ily liable therefor, unless the promissory note is given and received with an agreement that the note is to constitute payment of the original indebtedness. (*Giant Powder Co. v. Fidelity & Deposit Co.*, 214 Cal. 639, 642-643 [7 P.2d 1023]; *American System of Reinforcing v. Breakers Hotel Co.*, 217 Cal. 67 [17 P.2d 138]; *Hammond L. Co. v. Richardson Bldg. etc. Co.*, 209 Cal. 82, 86 [285 P. 851].) ▮ The effect of the execution of the said promissory notes was a vital issue in this case, and the failure to instruct thereon left the jurors without advice as to how they should solve this important question. The jurors were merely instructed to decide "how much is owing to Mr. Distefano" and to "adjust the award to Mr. Distefano in such a manner as shall appear to you to be just and equitable under all the circumstances." The jurors were not given any instructions at all regarding the claims of subcontractors and materialmen. They were thus left to determine for themselves whether the sum of $21,-319.42, or any part thereof, was due plaintiff, but they were not told how to approach the question. Moreover, in fairness to plaintiff, it appears from the instructions given, and in view of the failure to instruct on the claims of subcontractors and materialmen, that his recovery was limited to such labor, materials and services as he himself performed or furnished. These defects are serious and are such as to warrant a reversal. ▮ It is apparent, furthermore, that the trial court attempted to cure the defect when it undertook to adjudicate the issue as to the claims of materialmen and subcontractors by making a finding in this respect. As this issue was for the jury and not for the trial court, it was error to make such a finding.

▮ The next contention made by Hall is that the trial court erred in sustaining objections to the introduction of evidence in support of his first counterclaim for damages for faulty construction. Under this counterclaim Hall alleged that plaintiff negligently supervised the construction of the apartment house so as to cause the building to be completed in a defective manner in that neither the roof nor the exterior walls of the building were weathertight, thus causing damages to the interior of said structure and the contents thereof to the extent of $30,000. Hall produced a witness in support of this counterclaim, and also, in the face of an objection to such evidence, made a timely offer of proof. The trial court sustained the objection on the ground that Hall had failed to furnish plaintiff with a bill of particulars as

to the items comprising said counterclaim as required by Code of Civil Procedure section 454.[24]   The penalty for failure to furnish a bill of particulars, when one has been demanded, is that no evidence will be allowed in support of the cause of action pleaded.   The requirement that a party produce a bill of particulars, however, applies only to an action upon "an account."   (See 2 Witkin, Cal. Procedure, § 241, p. 1217.)   Section 454 has received a fairly broad interpretation and has been construed to cover almost any kind of contract action for a money claim made up of more than one item.   (*Long Beach etc. Dist.* v. *Dodge,* 135 Cal. 401, 407 [67 P. 499]; 2 Witkin, Cal. Procedure, § 243, p. 1219.) It has been held, however, not to apply to an account stated (*Auzerais* v. *Naglee,* 74 Cal. 60 [15 P. 371]; *Ahlbin* v. *Crescent Coml. Corp.,* 100 Cal.App.2d 646 [224 P.2d 131]), nor to an action upon a compromise agreement.   (*Henning* v. *Clark,* 46 Cal.App. 551 [189 P. 714].)   In *Ahlbin,* it is stated that section 454 is not applicable to a contract or a promissory note which has an account for its consideration.   It appears from the foregoing authorities that, at most, the requirement for a bill of particulars is restricted to actions based upon contracts seeking to recover "items of an account."   In *Kelly* v. *Hinkhouse,* 108 Wash. 93 [183 P. 86], the appellate court was called upon to interpret a Washington statute whose language was similar to that of section 454.   The Washington Supreme Court held that an action for damages for a breach of contract is not an action to recover "items of account" and that, accordingly, it was proper for the cross-complainant to ignore a demand for a bill of particulars.   We have been unable to find a case in this state, nor has any been cited, which holds directly that section 454 does not apply to an action for damages for tort.   The absence of any such authority results undoubtedly from what appears to be obvious, i.e., that an action for damages in tort is not an action upon "items of an account."   In *Eisele* v. *Oddie,* 120 F. 695, the reviewing court, in construing a Nevada statute similar to section 454, held that the provision for a bill of particulars was not applicable to causes of action in tort.   Likewise, in *McDonald* v. *Barnhill,* 58 Iowa 669 [12 N.W. 717], it is stated that a sec-

---

[24]The pertinent portion of Code Civ. Proc., § 454 provides: "It is not necessary for a party to set forth in a pleading the items of an account therein alleged, but he must deliver to the adverse party, within ten days after a demand thereof in writing, a copy of the account, or be precluded from giving evidence thereof."

tion using similar language to that of section 454 is limited by its terms to a pleading founded on an account and that it does not include an action for negligence.

The counterclaim in the instant case appears to allege both breach of contract and negligence. If the cause of action arises from a breach of a promise set forth in the contract, the action is ex contractu; but if it arises from a breach of duty growing out of the contract, it is ex delicto. (*Eads* v. *Marks*, 39 Cal.2d 807, 811 [249 P.2d 257]; *Peterson* v. *Sherman*, 68 Cal.App.2d 706, 711 [157 P.2d 863].) The counterclaim in the case at bench alleges that plaintiff "failed and neglected and refused to perform in accordance with the terms of said written agreement, and to the contrary so negligently and carelessly supervised construction of said apartment building as to cause. . . ." Although the allegations contain elements of both contract and tort, the gravamen of the action is negligence and therefore the counterclaim is delictual. An action based on the negligent failure to perform contractual duties is generally regarded as delictual notwithstanding that it also involves a breach of contract. (*Eads* v. *Marks, supra*; *Jones* v. *Kelly*, 208 Cal. 251, 254-255 [280 P. 942].) Accordingly, in the light of the foregoing authorities, a demand for a bill of particulars was not proper and Hall was justified in ignoring such demand. It was prejudicial error, therefore, for the trial court to exclude relevant and material evidence on the said counterclaim because the damages, if any, established thereby would diminish or defeat plaintiff's demand.

The final contention made by Hall is that plaintiff forfeited his right to a mechanic's lien by recording a willfully misstated verified claim of lien. This issue was an equitable one to be determined by the court and not by the jury. Hall relies upon section 1193.1, subdivision (k), of the Code of Civil Procedure, which provides: "Any person who shall wilfully include in his claim of lien filed for record pursuant to this chapter work not performed upon, or materials, appliances or power not furnished for, the property described in such claim, shall thereby forfeit his lien." The notice of mechanic's lien contained language to the effect that the contract price for the apartment house was $158,458.05, on account of which $30,000 had been paid, leaving a balance of $128,458.05 still due and owing after deducting all just credits and offsets. The misstatement claimed is that plaintiff not only included the amounts

due him personally, but, in addition, all amounts claimed to be due all subcontractors and materialmen on account of the construction of the building. It is also claimed by Hall that the claim of $128,458.05 in the notice of lien is so excessive that it "must have been willfully misstated." This assertion is predicated upon the fact that the claim dropped in stages from said sum of $128,458.05 to the sum of $60,702.00 claimed at the time of trial.[25]

It is apparent that these determinations are dependent upon the jury's findings as to the amount plaintiff is entitled to recover, if anything, and upon the jury's determination as to whether or not plaintiff is entitled to recover for the amounts due subcontractors and materialmen. In view of our determination that this case must be reversed in order to properly determine these issues, the question of the validity or forfeiture of the lien will likewise have to be retried by the trial court, because it must first be determined that there is an amount due plaintiff for which the mechanic's lien is to be security. ■■■■ It should be here noted that section 1193.1, subdivision (k), must be construed and harmonized with section 1196.1 of the Code of Civil Procedure, which provides in part as follows: "No mistake or errors in the statement of the demand, or of the amount of credits and offsets allowed, or of the balance asserted to be due to claimant, . . . shall invalidate the lien, unless the court finds that such mistake or error in the statement of the demand, credits and offsets, or of the balance due, was made with the intent to defraud. . . ." (See *Callahan* v. *Chatsworth Park, Inc.*, 204 Cal.App.2d 597, 608 [22 Cal.Rptr. 606].) Section 1193.1, subdivision (k), deals with two kinds of false claims only, i.e., claims for work not performed on the property and claims for materials, appliances or power not furnished for the property, while errors and mistakes consisting of demands for an excessive price or the failure to give credits for all payments made on account are covered by section 1196.1. (*B. & J. Constr. Co.* v. *Spacious Homes, Inc.*, 204 Cal.App. 2d 216, 220 [22 Cal.Rptr. 41].) ■■■■ The two sections apply only where there is an actual intent to defraud. (*B. & J. Constr. Co.* v. *Spacious Homes, Inc., supra*; *Henley* v. *Pacific Fruit etc. Co.*, 19 Cal.App. 728, 734 [127 P. 800]; *Callahan* v. *Chatsworth Park, Inc., supra*; *Blanck* v. *Commonwealth Amusement Corp.*, 19 Cal.App. 720, 724 [127 P.

[25]I.e., $81,231.42 in the bill of particulars and $73,512.37 in the amended bill of particulars.

805].)   Accordingly, the application of these sections is not one of law but one of fact because intent to defraud always presents a factual question. (*Callahan v. Chatsworth Park, Inc., supra*; *B. & J. Constr. Co. v. Spacious Homes, Inc., supra*; *California Portland Cement Co. v. Wentworth Hotel Co.*, 16 Cal.App. 692, 704 [118 P. 103, 113].)   In order to find such intent to defraud the evidence must be clear and convincing, and the question necessarily involves the weighing of evidence.   (*Callahan v. Chatsworth Park, Inc., supra*; *California P. C. Co. v. Wentworth Co., supra*.)[26]

### Dozier's Appeal

Dozier has appealed from "that portion of the judgment entered in the above-entitled action on March 4, 1960, which denied attorneys' fees and costs to said defendants on account of the trial of said action."   A perusal of the record discloses that no judgment has been rendered in this action for or against Dozier.   The judgment alluded to in the notice of appeal is the judgment in favor of plaintiff against Hall for $28,500, plus interest and costs, decreeing that plaintiff have a lien upon the property described therein, ordering a foreclosure of said lien, and ordering that plaintiff recover the sum of $4,000 as and for attorney's fees.   Said judgment not only does not make any adjudications with respect to Dozier, but it makes no mention of Dozier at all.

The record discloses that the jury was instructed that if it should determine and find that Dozier was released from any obligation to plaintiff, it should draw a line through the names of Carl L. Dozier and Winifred Dozier in the form of verdict submitted to the jury.   This unusual procedure produced the unfortunate result of eliminating Dozier from further consideration in the case.   The jury verdict shows two complete obliterations in ink over typewritten portions of the verdict, which it is conceded by the parties, consisted of the names of Carl L. Dozier and Winifred Dozier.   The judgment entered by the clerk on the jury's verdict, which was premature because the trial had not been concluded, carried the jury's verdict without the names of Dozier (because their names were scratched out) into the said judgment.   The said verdict, under the judge's instructions, purported to find in favor of Dozier and against plaintiff.   In the absence of

---

[26] § 1193.1, subd. (k), has been held to be penal in nature and therefore must be strictly construed.   (*Schallert-Ganahl Lbr. Co. v. Neal*, 91 Cal. 362 [27 P. 743]; *Callahan v. Chatsworth Park, Inc.*, 204 Cal.App.2d 597, 607 [22 Cal.Rptr. 606].)

any issues which required findings by the trial court with respect to Dozier, the judgment made by the court at the conclusion of the trial, should, insofar as it concerned Dozier, have been drawn pursuant to the jury's verdict. Dozier asserts that he was entitled to a determination of attorneys' fees claimed by him, and that this issue was reserved for the trial court's consideration. This is denied by plaintiff. The trial court made no findings with respect to any claim of attorneys' fees on the part of Dozier.

Under the posture of the record as it appears before us, a judgment should be entered pursuant to the jury's verdict with respect to Dozier, if there are no other issues to be determined as to them by the trial court. If such issues remain they should be determined by the trial court, findings made thereon, and an appropriate judgment entered upon the issues determined by both the jury and the trial court.

Accordingly, insofar as the present appeal by Dozier is concerned, it is premature because there is no final judgment from which an appeal may be taken. The attempted appeal from the judgment must, therefore, be dismissed. ██ Such dismissal likewise precludes us from considering the question of costs. An order assessing or denying costs, or striking a cost bill, can be reviewed only on an appeal from the judgment (*Markart* v. *Zeimer,* 74 Cal.App. 152, 156-158 [239 P. 856]; *Lacey* v. *Bertone,* 33 Cal.2d 649, 654 [203 P.2d 755]; *Mullin* v. *Rousseau,* 112 Cal.App. 719, 731 [297 P. 944]) or as a special order made after rendition and entry of final judgment. (*Markart* v. *Zeimer, supra; Lacey* v. *Bertone, supra; Smallpage* v. *Turlock Irrigation Dist.,* 26 Cal.App.2d 538, 541 [79 P.2d 752].) In either event, an order taxing or striking costs is not reviewable unless there has been a judgment in the trial court. (See 3 Witkin, Cal. Procedure, § 23, pp. 2167, 2168.) It should be here pointed out that our reversal of the judgment in favor of plaintiff and against defendant Hall is not an adjudication with respect to Dozier, and is not intended to place the case at large insofar as Dozier is concerned.

### Plaintiff's Appeal

Plaintiff has appealed from that part of the judgment which limits his recovery against Hall to $28,500. He urges his appeal only if Hall is successful in his appeal and requests that if the judgment is affirmed as against Hall, that then his appeal should be dismissed. As we have hereinabove indicated two of Hall's contentions made on this ap-

peal must be upheld and therefore require a reversal of plaintiff's judgment against Hall. With respect to Hall's appeal, and in support of his own appeal, plaintiff makes three contentions: (1) that he has not forfeited his lien under section 1193.1, subdivision (k), of the Code of Civil Procedure; (2) that the trial judge was fully justified in declaring that the unpaid claims of subcontractors were Hall's responsibility; and (3) that the trial judge was entirely justified, in the exercise of his discretion, in sustaining plaintiff's objections to the introduction of evidence as to claims concerning which Hall refused to furnish plaintiff a bill of particulars. These contentions have all been discussed in our consideration of Hall's appeal and they need not be repeated here. As to Dozier's appeal, plaintiff argues that Dozier is not entitled to attorneys' fees or costs. As we have hereinabove pointed out, we cannot consider Dozier's appeal on its merits because such appeal is premature. Inasmuch as our reversal of plaintiff's judgment against Hall will set the cause for retrial as between plaintiff and Hall, the award of attorney's fees in favor of plaintiff and against Hall is likewise set at large for determination upon such retrial.

The judgment in favor of plaintiff, Pascal Distefano, and against defendants Charles W. Hall and Dorothea Fabian is reversed and the cause as between such parties is remanded for a retrial.[27] The appeal of defendants Carl L. Dozier and Winifred Dozier is dismissed. Each of the parties shall bear his own costs on appeal.

Bray, P. J., and Sullivan, J., concurred.

A petition for a rehearing was denied August 14, 1963, and the petition of defendants and appellants for a hearing by the Supreme Court was denied September 18, 1963.

---

[27]In view of the several and complicated issues to be submitted to the jury, we respectfully suggest to court and counsel the use of special verdicts upon the retrial.